Pansy Lee McAVINEW, Respondent,

v.

Richard C. McAVINEW, Appellant.

No. WD 38789.

Missouri Court of Appeals,
Western District.

July 14, 1987.

Michael L. DiCavalcante, Kansas City, for appellant.

Karen A. Plax, Kansas City, for respondent.

Before GAITAN, P.J., and SHANGLER and MANFORD, JJ.

GAITAN, Presiding Judge.

Appellant, Richard McAvinew, sought modification of the 1979 decree dissolving his marriage to respondent, Pansy Lee McAvinew. The 1979 decree required that appellant pay $625.00 per month maintenance to respondent and that he keep respondent as beneficiary on his Government life insurance policy in the amount of $47,-500.00. The trial court modified the decree to require appellant to pay $400.00 per month maintenance to respondent and to keep respondent as beneficiary on the insurance policy in the amount of $17,000.00. Appellant claims that the trial court abused its discretion in not eliminating maintenance to respondent, and that the requirement that he keep respondent as his life insurance beneficiary is an order of "posthumous maintenance", contrary to § 452.-370 RSMo. We affirm the order of the trial court.

At the time of the dissolution decree in April, 1979, the parties divided their assets per a separation agreement, with each party receiving $45,629.00 in net value. Appellant was employed by the U.S. government at a monthly gross salary of approximately $4000.00. Appellant retired from his job at age 62 for health reasons and does not plan to return to work.

Appellant's present monthly income from social security and pensions is $2087.00. Appellant has remarried. Appellant elected to have his federal pension with a joint and survivor annuity for his present wife. As a result of this election, appellant's present pension income is reduced by 10%. Appellant testified that he has ceased to maintain any life insurance for which respondent is the beneficiary because the cost of doing so is beyond his means. Appellant, however, does maintain a life insurance policy worth $65,000.00 with his present wife as the beneficiary.

Appellant's present wife has some interest income and owns some income-producing properties. She does not contribute anything toward the monthly household expenses which she and appellant incur. Appellant testified that his monthly expenses are $2043.76. This amount should be reduced by $85.00 to $1958.76 for the storage and insurance on appellant's airplane which he sold 3 months prior to the modification hearing.

Respondent is 61 years old and is unemployed. Respondent does not have a high school education and did not work during the parties' 35 year marriage, except for an unsuccessful attempt at selling antiques. After the divorce, respondent tried to earn an income from selling antiques and framing pictures but was unsuccessful in making a profit. Respondent is no longer able to do these activities due to arthritis.

Respondent received the family home, which had a net value of $22,900.00 at the time of the dissolution. She also received the furnishings, which included several antiques. Respondent sold the house receiving $22,000.00 in cash and a mortgage of $20,000.00. Respondent also sold the furnishings over a period of time, but there was no evidence as to how much she received from the sales.

Respondent invested the proceeds from the sale of the house and furniture in interest-bearing accounts. In 1985, respondent had annual interest income from these investments of $9,119.75. Respondent also received $2,411.00 interest income from the mortgage she received when she sold the family home. In addition, respondent received $1,220.00 interest on a personal loan she made to her son. Therefore, respondent's total pretax interest income from 1985 was $12,751.00.

Respondent testified that the personal loan to her son will be paid off "soon" and she will no longer have that loan as a source of interest income. Respondent also testified that a certificate of deposit in the amount of $35,000.00 would mature in October, 1986 and the interest rate she

could receive on those funds would be approximately half.

Respondent purchased a duplex in May, 1984 for $62,375.00, paying $2,300.00 down and giving a mortgage on the balance. Respondent rents out one-half of the duplex for $385.00 per month. She is usually without a renter for two months per year. In 1985, respondent's out-of-pocket expenses for the duplex, excluding depreciation, exceeded her rental income by $1,383.00. Considering depreciation, respondent's income tax return showed a loss of $3,113.00 on the duplex rental in 1985.

Interest income, rental income and maintenance are respondent's only sources of income. Considering that the expenses associated with renting her duplex exceed the rental income, respondent claims that her monthly gross income from interest and maintenance totals is $1,589.99. Respondent testified that her average monthly expenses are $2,225.00. In spite of the fact that respondent's monthly expenses exceed her monthly gross income, respondent has accumulated approximately $77,260.00 in bank accounts.

We are cognizant, however, that respondent has had to sell the family home, household items, and some personal property in order to accumulate this amount of savings. She testified that she had to cash in an Individual Retirement Account of $5,000.00 in 1985 to meet her expenses. This was during a period when appellant had ceased making maintenance payments to respondent. It appears that when appellant is making the maintenance payment, respondent has not had to significantly deplete her savings to meet her expenses. Respondent testified that she sold everything to accumulate this money because if something happened to appellant such that her maintenance ceased, she would have had nothing to live on.

■ In reviewing the trial court's judgment, we note that neither an increase in the wife's income nor a decrease in the husband's income alone justifies or requires a modification of a maintenance award. *Early v. Early,* 659 S.W.2d 321, 323 (Mo.App.1983); citing, *Van Luvan v.*

*Van Luvan,* 577 S.W.2d 156, 157 (Mo.App. 1979). There must be a change in circumstances justifying modification. *Id.* Although respondent has managed to produce some interest income for herself, she did so by selling her home and furnishings. Her expenses far exceed the interest income that she receives. Appellant's income has decreased due to his retirement, but he still has $2,087.00 monthly income from social security and pensions. Although appellant's circumstances have changed, we do not believe the change is so substantial as to require a termination of maintenance. This is particularly true in light of the fact that appellant's expenses could be shared by his present wife. We do not find the trial court's reduction of maintenance, rather than termination of maintenance, to be an abuse of discretion in light of the evidence.

■ We now consider appellant's second point that the court's order that appellant maintain respondent as beneficiary on his government life insurance policy is "posthumous maintenance" contrary to § 452.-370.2 RSMo, which provides:

Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future statutory maintenance is terminated upon the death of either party ...

Appellant cites *Niederkorn v. Niederkorn,* 616 S.W.2d 529 (Mo.App.1981) to support his argument. In *Niederkorn,* the court considered whether an order that the respondent keep life insurance with his daughter as beneficiary constituted posthumous child support. The *Niederkorn* court held:

The Missouri Supreme Court has held "that the liability of the father for the future support of his minor children terminates at his death, regardless of the fact that the obligation for such support is evidenced by a judgment." *Gardine v. Cottey,* 360 Mo. 681, 230 S.W.2d 731, 750 (1950). *See also Fower v. Fower Estate,* 448 S.W.2d 585, 587 (Mo.1970). Since the benefits of the life insurance policy are not payable prior to husband's death, a decree that it be kept in effect

amounts to an order for posthumous child support. *See Sunderwirth v. Williams,* 553 S.W.2d 889, 894–95 (Mo. App.1977).

*Niederkorn,* 616 S.W.2d at 538.

In reaching its holding, the *Niederkorn* court noted that § 452.370.3 is silent regarding the effect of the death of the parent on his or her obligation to pay child support. The *Niederkorn* court, therefore, followed the common law rule stated in *Gardine* as set out above.

The legislature was not silent regarding the effect of the death of a spouse on his or her obligation to pay maintenance. Section 452.370.2 states that death terminates the obligation, "[u]nless otherwise agreed in writing or *expressly provided in the decree,* ..." (emphasis added). Thus, even if we were to agree with the rationale of *Niederkorn,* that life insurance constitutes posthumous support or maintenance,[1] we must go on to consider whether such an award is "expressly provided for in the decree," and therefore proper.[2]

*In re Marriage of Koktavy,* 44 Colo.App. 305, 612 P.2d 1161 (1980), held that a statute identical to § 452.370.2 RSMo, "contemplates the power of the court to provide that maintenance shall continue beyond the death of the party obligated to pay maintenance." The court found that a decree which required the husband to maintain life insurance with his former wife as the beneficiary expressly provided for maintenance to continue beyond the husband's death.

We likewise find that under § 452.370.2 RSMo, the decree may expressly provide that appellant's obligation for maintenance is not terminated upon his death. A provision for life insurance naturally contemplates that the policy benefits will be paid after the insured's death. By providing for maintenance in the form of life insurance the decree expressly provides that this maintenance provision is not terminated upon the obligor's death.

Appellant only contests the power of the trial court to require him to keep life insurance for the benefit of respondent. He does not attack the propriety of the amount of the award or the modification which the trial court made. We therefore have considered only whether the trial court exceeded its authority in ordering that appellant keep the life insurance and conclude that it did not.

The judgment of the trial court is affirmed.

All concur.

---

1. We do not, by our holding in this case, express agreement with the *Niederkorn* court that life insurance benefits are posthumous maintenance, and we point out that some jurisdictions hold that they are not. *See, e.g., Gallo v. Gallo,* 184 Conn. 36, 440 A.2d 782, 788 (1981) ("Insurance premiums are paid during a decedent's lifetime and the proceeds flow directly to the beneficiary. This is not analogous to a claim of continued payment of periodic alimony from the estate of the deceased ex-spouse.") *See generally,* Annot., 59 A.L.R.3d 9 (1974), and cases cited in § 4[2] thereof.

2. The *Niederkorn* court did not discuss whether there is an exception to the common law rule such that the decree may expressly provide that the support obligation should survive the parent's death. We note that the *Gardine* court did not deal with this issue, but did recognize that "the weight of authority seems to be that a father's obligation under a divorce decree to pay [child support] does not necessarily terminate upon his death, ... particularly ... where the judgment on its face manifests an intention to make defendant's liability for maintenance a continuing one after his death ... (citation omitted)." *Gardine,* 230 S.W.2d at 748.