Joyce F. JOHNSON, Petitioner/Appellant,

v.

Shirley D. JOHNSON, Respondent/Respondent.

No. 65864.

Missouri Court of Appeals, Eastern District, Division One.

March 7, 1995.

---

2.  *See* RSMo Chapter 358.

3.  *See* RSMo § 359.020.

Terry A. Bond, Vines, Ross, Kraner & Rubin, P.C., Clayton, for appellant.

Byron Cohen, Clayton, for respondent.

REINHARD, Presiding Judge.

Wife appeals from the property disposition portion of a dissolution decree. We vacate in part, and modify and affirm as modified in part.

Husband and wife were married on December 9, 1956; they separated on July 10, 1990.[1] In July 1990, wife filed a petition for dissolution. On August 22, 1990, husband filed an answer and cross-petition for dissolution. On October 15, 1990, wife's motion for maintenance *pendente lite* (PDL) was sustained; husband was ordered to pay $550 a month to wife for temporary maintenance. Husband made no payments after April of 1991. The cause was heard on January 28, 1994.

---

1. The one child born of the marriage was emancipated at the time of the dissolution proceedings.

Wife, fifty-five years old at the time of the hearing, testified she was then living with her aunt (paying $300 a month rent). She testified that she was employed by St. Andrew's Home Service as a "homemaker and companion".[2] She stated she had been employed in both capacities since December of 1990 (her first job since the 1970's). She testified she spends approximately forty hours a week as a homemaker and twenty-eight hours a week as a companion (although her hours sometimes greatly vary, depending on the need for her services). Wife testified she had arthritis in both knees and had trouble with walking and standing.

Husband, fifty-six years old at the time of the hearing, retired from his job as an "assembler" at General Motors in July of 1986. He had two other short-lived jobs after his retirement (lasting two and three days); he stated that health problems contributed to those jobs not continuing. Husband testified that, in addition to a hospitalization in 1981 for chest pains, he had been hospitalized seven times since 1992 for "liver failure".[3] Husband's pension from General Motors Corporation was currently paying him $1,226 a month. Husband testified he had recently received a social security check of approximately $22,400 (which he testified was to be paid to General Motors for the supplemental pension he had been drawing).

The court disposed of the marital property in the following manner:

A. *Marital Property Awarded to Wife*

1) Marital home at 8709 Forest, Charlack, MO, subject to Husband's life estate

2) Husband's General Motors Pension upon his death

3) 1994 Saturn

4) Life Insurance on Wife

5) 2 shares of GM stock

B. *Marital Property Awarded to Husband*

1) Life estate [in] marital home

2) General Motors Pension

3) PDL maintenance arrearage of $21,785.00 is forgiven in that Wife will receive marital home as her property upon Husband's death

4) 1988 Caprice

5) 2 shares of GM stock

The order stated that all other personal marital property of the parties was the property of the person in possession or in who's name the property was titled or denominated.

■ Wife asserts the trial court "erred in forgiving the husband's indebtedness to the wife of $21,785.00 which originated from a PDL order because the husband had not appealed from the PDL order which then became final 30 days after the entry of the order...." Our standard of review is provided by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the trial court's order unless it is unsupported by substantial evidence, unless it is against the weight of the evidence or unless it erroneously declares or applies the law. *Id.* at 32.

■ An order on a PDL maintenance motion is a final judgment disposing of the merits from which an appeal may be taken.[4] *In re Marriage of Gillett*, 762 S.W.2d 525, 527 (Mo.App.1988). Such orders are in no way dependent upon the merits of the underlying dissolution suit. *Wilson v. Wilson*, 822 S.W.2d 917, 925 (Mo.App.1991). Failure to appeal from PDL orders confer finality upon them. *State ex rel. Carlson v. Aubuchon*, 669 S.W.2d 294, 296 (Mo.App.1984). The trial court loses jurisdiction of the *independent proceeding* for maintenance *pendente lite* after the order becomes final. *F.W.H. v. R.J.H.*, 666 S.W.2d 910, 913 (Mo.App.1984). In the instant case, the PDL maintenance order became final thirty days after its entry. *See Carlson*, 669 S.W.2d at 297. Thus, the trial court was without jurisdiction to retro-

---

**2.** In her homemaker capacity, wife cleans and cooks for elderly persons. As a companion, wife provides services such as reading books and writing letters.

**3.** Husband stated he had been an alcoholic for 10 to 15 years but is now recovering. He testi-

fied that he was on a waiting list for a liver transplant.

**4.** The purpose of temporary allowances in marital dissolution action is to maintain status quo pending final judgment. *Cross v. Cross*, 790 S.W.2d 928, 929 (Mo.App.1990).

actively modify husband's PDL maintenance obligation. *See, e.g., id.*[5] The portion of the dissolution decree which purports to do so is vacated.

■ Wife also asserts the trial court erred in its disposition of the marital property because the division of property was inequitable. She argues that a "very substantial majority of the marital property consisted of the [marital] home ... and the General Motors Pension. Both of these items were awarded to the Husband during his lifetime with the Wife to then receive them upon the death of the Husband."[6]

■ The trial court is vested with considerable discretion in dividing marital property and we will only interfere when the division is so heavily weighted in favor of one party as to amount to an abuse of discretion. *Gaston v. Gaston,* 776 S.W.2d 465, 467 (Mo. App.1989). Though the division of marital property need not be equal, it must be just and equitable. *Oldfield v. Oldfield,* 688 S.W.2d 778, 781 (Mo.App.1985).[7] We agree with wife that the inequitable property disposition in this case is not justified by either the law or the evidence presented.

Pursuant to Rule 84.14, we are able to enter such judgment as the trial court should have rendered. *Oldfield,* 688 S.W.2d at 781; *see also Washington v. Washington,* 763 S.W.2d 714, 715 (Mo.App.1989). We modify the marital property disposition of the dissolution decree as to the marital home at 8709 Forest, Charlack, Missouri, by deleting the life estate in husband and the remainder in wife; we award wife a one-third (⅓) interest as a tenant in common in the marital home.

*See Washington,* 763 S.W.2d at 715–16. While the issue of allowing parties to remain as tenants in common after dissolution has been the subject of debate, we approved of the practice in *Murray v. Murray,* 614 S.W.2d 554 (Mo.App.1981). It appears that here, as in *Washington,* "the economics involved, especially the fact that neither party has sufficient funds to purchase the other's interest in the property, support an allocation as tenants in common." *Id.* 763 S.W.2d at 716.

The trial court's retroactive modification of husband's PDL maintenance obligation is vacated. We affirm the remainder of the dissolution decree as modified.

CRANDALL and CRAHAN, JJ., concur.

---

**5.** In *Carlson,* wife was awarded, *inter alia,* attorney fees *pendente lite;* no appeal was taken from that order. In the dissolution decree, the trial court "vacated" the order for attorney fees *pendente lite.* We found the court lacked the jurisdiction to change the award. *Carlson,* 669 S.W.2d at 297.

**6.** Wife and husband, in their respective statements of property, put the home's value at $48,000; each agreed that nothing was owed on the house. At trial, husband stated the house was worth approximately $55,000. Husband's property listing put the value of household goods at $5,151.67; wife's totalled $7,200.00.

**7.** Section 452.330.1, RSMo 1994, states that the court "shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:"

> (1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;
> (2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
> (3) The value of the non marital property set apart to each spouse;
> (4) The conduct of the parties during the marriage; and
> (5) Custodial arrangements for minor children.