M.A.Z., Appellant/Cross–Respondent,

v.

F.J.Z., Respondent/Cross–Appellant.

Nos. 67972, 67986.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 11, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 23, 1997.

Application to Transfer Denied
May 27, 1997.

David B. Lacks, Leigh Joy Carson, Clayton, for appellant.

Ted Lucas, Robert B. Hoemeke, St. Louis, for respondent.

CRAHAN, Presiding Judge.

Husband and Wife appeal the judgment and decree dissolving their eight year marriage. Wife complains that the maintenance she was awarded, $180,000.00 per year, is inadequate to meet her reasonable needs. Husband maintains that the maintenance award is excessive and unsupported by substantial evidence. Husband also challenges the trial court's division of property and its determination that his obligation to pay maintenance should continue in the event of his death unless secured by a $1,000,000.00 life insurance policy for Wife's benefit. We hold that the maintenance award and the provision for continuation of maintenance in the event of Husband's death are not supported by substantial evidence and reduce the maintenance award to Husband's requested amount of $90,000.00 per year. We also modify the division of property. As so modified, we affirm the judgment.

The parties were married in July, 1986 and Wife filed for dissolution in April, 1994. Both parties had been married before and their children from these prior unions were emancipated at the time of trial. No additional children were born of this marriage so the only issues at trial pertained to Wife's request for maintenance and the division of property.

When the parties first met, Wife was managing a restaurant and working as a lounge singer. Husband was president and the sole shareowner of a printing company.

Over half of the company's business is derived from businesses controlled by a long-standing friend of Husband's. Much of Husband's time is devoted to maintaining his close relationship with his friend and friend's subordinates and the pursuit of additional business. To that end, Husband's company provides him with golf club memberships, season tickets to artistic and sporting events and virtual carte-blanche funding for entertainment of his current and prospective clients.

When Husband and Wife were married, Wife ceased working outside the home and assisted Husband in maintaining his close working relationship with his clients. Wife participated in a "birthday club" which included the principal client's wife and the subordinates' wives and attended numerous lunches and social events. Nearly all of the couple's evening meals were taken in restaurants or clubs and paid for by the company. Husband and Wife took numerous trips with clients, also paid for by the company.

The success of Husband's business strategy is unarguable. As Husband's friend's business has expanded through mergers and acquisitions, Husband's company has obtained additional business and achieved remarkable growth. Gross sales increased nearly six fold during the marriage and Husband's income, which the trial court found to be substantially in excess of $1.5 million per year, now exceeds the company's entire gross sales in the first year of marriage.

The trial court found that neither party had engaged in significant marital misconduct.

At the time of dissolution, the parties owned two homes, one in St. Louis and one in Vero Beach, Florida. Wife and Husband each valued the St. Louis home at $949,-400.00 after deducting a 6% sales commission. That home was encumbered by a mortgage of $409,541.00. Wife valued the Vero Beach home at $1,100,000.00 without any allowance for a sales commission. Husband valued the Vero Beach home at $949,400.00, after deducting a 6% sales commission. Both homes contained extensive furnishings.

Wife submitted a statement of income and expenses claiming $0 income and monthly expenses of $25,450.00 ($305,400.00/yr.), which included $9,000.00 per month for mortgage payments, utilities, insurance and maintenance for the St. Louis home and $1,000.00 per month for maintenance of the Florida home. Wife's other claimed expenses are discussed *infra*. The trial court awarded Wife the St. Louis home and Husband was awarded the Florida home. The trial court found, however, that neither Wife's reasonable needs nor standard of living required maintaining her in the 5,500 square foot marital residence. The decree thus implicitly assumes that the home will be sold and a more suitable residence will be obtained with the $539,859.00 equity.

The trial court found Wife to be an intelligent, competent and able-bodied person, capable of working and contributing to her support, "but she is not possessed of adequate means to provide for her reasonable needs nor to maintain the standard of living she enjoyed during her marriage." The trial court further found that there was insufficient evidence as to what salary Wife could earn and did not attribute any income to her in making the award of maintenance. Aside from its observation that Wife did not need to maintain such a large residence, the trial court gave no indication of which portions of Wife's claimed expenses were found to be reasonable but found Wife's overall reasonable gross monthly needs to be $15,000.00. Wife was awarded periodic maintenance in that amount, payable bi-monthly, subject to modification. The trial court further ordered that maintenance shall not terminate upon the death of Husband unless at his death he has in full force and effect an insurance policy on his life with Wife as the beneficiary in the face amount of $1,000,000.00. In that event, maintenance would terminate upon Wife's receipt of the proceeds. Maintenance would also terminate upon Wife's death or remarriage.

Wife was awarded a substantial amount of separate property, consisting primarily of: her interest in her family's recreational property (valued by Wife at $108,000.00); approximately fifty items of jewelry given to Wife by Husband during the marriage at a cost of

more than $238,000.00 [1]; selected furniture and household goods in the marital residence and selected items from the Florida home (not valued); several furs given to Wife by Husband during the marriage at a cost of more than $45,000,00; and an investment account valued at $27,349.00.

Husband was also awarded substantial separate property consisting of his stock in the company, including two country club memberships, valued at $2,000,000.00; a Leroy Nieman print (not valued); two guns; an IRA account, the separate property portion of which was valued at approximately $50,000.00; and three term life insurance policies, not valued, held by an irrevocable trust.

The trial court's award of marital property was as follows:

### Marital Property Awarded to Wife

| | | | |
|---|---|---:|---|
| 1. | Marital home | $539,859.00 | (equity) |
| 2. | Furniture and household goods | 30,425.00 | |
| 3. | Sheared Mink Swing Coat (value not known) | | |
| 4. | Checking account (Boatmen's) | 2,110.00 | |
| 5. | Checking account (Magna) | 1,890.00 | |
| 6. | Proceeds of account withdrawn by Wife [2] | 28,000.00 | |
| 7. | IRA account | 18,727.00 | |
| 8. | Cash award payable by Husband | 400,000.00 | |
| | | $1,021,011.00 | |

### Marital Property Awarded to Husband

| | | | |
|---|---|---:|---|
| 1. | Florida residence | $410,240.00 | (equity) |
| 2. | Furniture and household goods | 31,998.00 | |
| 3. | Itemized personal goods in Husband's possession | 11,450.00 | |
| 4. | Magna checking account | 25,398.00 | |
| 5. | Boatmen's Bank account | 14,281.00 | |
| 6. | Jefferson savings account | 100.00 | |
| 7. | Beach Bank of Vero account | 2,315.00 | |
| 8. | 1994 Lincoln Town Car | 19,000.00 | |
| 9. | Boat | 14,515.00 | |
| 10. | Merrill Lynch account | 101,103.00 | |
| 11. | Merrill Lynch account | 43,785.00 | |
| 12. | Merrill Lynch account | 19,108.00 | |
| 13. | Debt owed to Husband by Company | 524,700.00 | |
| 14. | Debt owed to Husband by Son | 30,000.00 | |
| 15. | Interest in limited partnership | 26,000.00 | |
| 16. | Boone Valley Golf membership | 18,000.00 | |
| 17. | 1993 Federal Income Tax liability | (72,287.00) | |
| 18. | 1994 Federal/State Tax liability | (118,000.00) | |
| 19. | Cash payment to Wife | (400,000.00) | |
| | | $701,706.00 | |

---

Because the division of property may impact the appropriateness of the maintenance award, we will address that issue first. In his first point on appeal, Husband complains that the trial court abused its discretion and failed to properly apply the factors set forth in § 452.330.1 RSMo 1994 [3] in awarding Wife

1. The trial court made no finding of the overall value of the jewelry. The $238,000.00 figure represents the sum of the purchase prices for just 19 items. Neither purchase prices nor values for the remaining items were established at trial.

2. These funds were withdrawn by Wife, ostensibly for living expenses, prior to filing. The trial court found that these funds were not used for living expenses and that more than $16,000 was given to Wife's children.

3. Section 452.330.1 RSMo 1994 provides:

452.330. **Disposition of property, factors to be considered**

1. In a proceeding for dissolution of the marriage or legal separation, or in a proceed-

a disproportionate share of the marital property accumulated during their eight year, childless marriage. Specifically, Husband complains that: (1) the economic circumstances of the parties do not justify an award greatly favoring Wife in view of her substantial separate property, generous maintenance award and unimpaired earning capacity; (2) the marital property was accumulated entirely through Husband's efforts; (3) there was no misconduct found to justify an unequal award; and (4) the court overvalued Husband's property and awarded virtually all liquid assets to Wife, thus compounding the inequity.

■■■ The trial court is vested with considerable discretion in dividing marital property and we will only interfere when the division is so heavily weighted in favor of one party as to amount to an abuse of discretion. *Johnson v. Johnson*, 894 S.W.2d 245, 248 (Mo.App.1995). Although the division of property need not be equal, it must be just and equitable. *Id.*

As valued by the trial court, the property award favors Wife 59.3% to 40.7%. Husband, however, complains that the disparity is actually greater than that because the trial court erroneously valued the Florida home he was awarded and double counted the Boone Valley Golf Club membership as both his separate property and as part of his share of marital property.

Husband's latter contention is clearly correct. In its itemization of Husband's separate property, the trial court valued Husband's stock in the company at $2,000,000.00, including club memberships at Old Warson Country Club and Boone Valley Golf Club. This was consistent with the evidence at trial that the club memberships were, in fact, held by the company. In its division of marital property, however, the trial court again listed the Boone Valley Golf Club membership as part of Husband's share of the marital property, thus overstating the value of the marital property awarded to Husband by $18,000.00. We hereby amend the decree to delete this item from the list of marital property awarded to Husband. This reduces the value of Husband's share to $683,706.00.

Husband's attack on the trial court's valuation of the Florida home is based on the fact that it exceeds the value attested by his appraiser and inconsistently fails to make any allowance for a real estate commission as was done in calculating the value of the home awarded to Wife. Husband's appraiser valued the home at $1,000,000.00, including a separately transferable membership in a golf club. Husband valued it at $1,010,000.00, the same value he assigned to the marital home awarded to Wife, before any allowance for a real estate commission. Wife valued the Florida home at $1,100,000.00, the value assigned by the trial court.

■■■ The trial court may believe or disbelieve the testimony of any witness regarding the value of property, including an expert witness. *Kahn v. Kahn*, 839 S.W.2d 327, 336 (Mo.App.1992). As an owner of the property, Wife was qualified to give an opinion as to its value. *Kacich v. Kacich*, 785 S.W.2d 606, 607–08 (Mo.App.1990). Husband urges, however, that an owner without knowledge of the property should be excluded from giving an opinion as to its value, citing *State ex rel. Missouri Hwy. & Trans. Comm'n v. Menley*, 778 S.W.2d 9, 10–11 (Mo.App.1989). As support for his claim that Wife lacked knowledge of the property, Husband points to Wife's inability to recall the exact purchase price or

ing for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall set apart to each spouse his property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

(1) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(2) The value of the non-marital property set apart to each spouse;

(3) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

the cost of improvements. This evidence does not, however, demonstrate that Wife was wholly lacking in knowledge of the property or its value. Wife testified that she had stayed in the home on more than one occasion and that she was familiar with the character and value of properties situated at the resort. Husband did not object to Wife's evidence as to the value of the Florida home and the weight to be accorded to that evidence was a matter solely for the trial court.

■ Husband also complains that the trial court failed to deduct any allowance for a real estate commission in determining the value of the equity in the Florida home he was awarded. Both Husband's and Wife's calculation of the equity in the marital home awarded to Wife reflected a deduction of a 6% sales commission and then a reduction for the mortgage. The trial court accepted this valuation in the decree and Husband does not contest it on appeal. Thus, the propriety of deducting a real estate commission in valuing the marital home is not before us. Although Husband urges that consistency required a similar deduction for the Florida home, he concedes that, absent evidence indicating an imminent sale, it is ordinarily inappropriate to deduct a hypothetical real estate commission in determining equity. *See Ray v. Ray*, 877 S.W.2d 648, 652 (Mo.App.1994). In this case, Husband testified that he intended to keep and continue to use the residence in Florida, where his principal client also maintained a residence. Moreover, the value assigned by the trial court was consistent with the value assigned in Wife's statement of property and is thus supported by substantial evidence. We find no error in the trial court's valuation of the Florida residence awarded to Husband.

Therefore, with the exception of the double-counted golf club membership, we accept the trial court's valuation of the marital property. Using those values as corrected, Wife was awarded approximately 60% of the marital property compared to Husband's 40%.

■ We have carefully reviewed the record and can find nothing which justifies such a disproportionate award in favor of Wife. There is evidence that Wife made some contribution toward the acquisition of marital property, both by assisting Husband in putting his life back in order at the outset of the marriage and by her extensive participation in entertaining Husband's clients.[4] Even viewed in their most favorable light, however, Wife's contributions toward the acquisition of the marital property cannot in any sense be deemed equal to Husband's. It is undisputed that Husband's income was the source of all of the marital property divided in the decree, and a substantial majority of Wife's separate property. The size of that income was attributable in large measure to Husband's continuing relationship with his principal client, which long predated the marriage and continued thereafter. Husband also shouldered the responsibility of managing the business as its president. Thus, the first statutory factor does not support an award disproportionately favoring Wife.

Although the value of the parties' non-marital property is also decidedly in Husband's favor, this is attributable solely to Husband's ownership of his business, which long predated the marriage. Further, as Husband points out, Wife's financial condition is far better than when she entered the marriage. As discussed *infra,* Husband also concedes that Wife is entitled to a maintenance award which we find *infra* to be sufficient to satisfy all of her reasonable needs as shown by this record. The second and third statutory factors do not support an award disproportionately favoring Wife.

The trial court did not find any significant marital misconduct by either party and there are no custody arrangements for minor children. Thus, the last two statutory factors do not support a disproportionate award in favor of either party.

On this record, we hold that it was an abuse of discretion to order a disproportionately greater share of the marital property to Wife. In his brief, Husband does not contend that he is entitled to a disproportionately greater share and instead asks that we order that the marital property be divided 50% to

---

4. On the other hand, Wife conceded that there was at least some conflict between her and the principal client's wife, which diminishes somewhat the value of the latter contribution.

Husband and 50% to Wife. As a practical matter, this can be most readily accomplished by reducing the cash award payable by Husband to $225,000.00, which results in approximately equal shares.[5] We order that paragraph 16F of the decree be so modified.

We now turn to the trial court's award of $15,000.00 per month ($180,000.00 per year) in maintenance. Wife asserts that the trial court abused its discretion in awarding "only" $15,000.00 per month in maintenance in view of Wife's financial resources, the comparative earning capacity of the parties, the standard of living established during the marriage and Husband's ability to meet his needs while meeting those of Wife. Husband urges that the award is not supported by substantial evidence because (1) the trial court specifically found that Wife did not need to maintain the large and expensive home she was awarded; (2) Wife's claimed expenses were grossly overstated and not supported by substantial evidence; and (3) the trial court erroneously failed to consider Wife's earning capacity or the income Wife could derive from the separate and marital property she was awarded in the decree. Husband seeks a reduction of the maintenance award to $7,500.00 per month ($90,-000.00 per year).

■ The party seeking maintenance bears the burden of establishing need before maintenance can be awarded. *Chapman v. Chapman*, 871 S.W.2d 123, 126 (Mo.App. 1994). Maintenance can only be awarded if the requesting party cannot meet his or her reasonable needs through property or employment. *Whitworth v. Whitworth*, 878 S.W.2d 479, 483 (Mo.App.1994). Although maintenance awards are within the discretion of the trial court, such awards must be "made within a reasonable tolerance of proof." *Chapman*, 871 S.W.2d at 126 (quoting *Cunningham v. Cunningham*, 673 S.W.2d 478, 480 (Mo.App.1984)).

In her Statement of Income and Expenses, Wife claimed the following monthly expenses as required to maintain her previous standard of living:

| | |
|---|---|
| Rent or mortgage payments | $6,000.00 |
| Utilities | 1,500.00 |
| Automobile (incl. gas/oil, routine maintenance, license & lease payments) | 1,050.00 [6] |
| Life insurance | 100.00 |
| Homeowner's insurance | 500.00 |
| Auto insurance | 150.00 |
| Charitable contributions | 500.00 |
| Food | 1,500.00 |
| Clothing | 1,500.00 |
| Medical/dental care | 1,000.00 |
| Recreation | 3,000.00 |
| Laundry/Cleaning | 100.00 |
| Barber/Beauty Shop | 500.00 |
| Gifts | 1,000.00 |
| Vacations/travel | 3,000.00 |
| House maintenance/St. Louis | 1,000.00 |
| House maintenance/Florida | 1,000.00 |
| Pet care | 50.00 |
| Misc. out-of-pocket | 2,000.00 |
| | $25,450.00 |

■ Few of these claimed expenses were discussed in Wife's testimony and those that were discussed were discussed only anecdotally. Wife conceded that she "never saw a bill" and she gave no indication that she made any attempt to investigate or substantiate any of the claimed expenses. Although the trial court gave no breakdown of the expenses it found to be reasonable, thus complicating our review, we can find no combination of claimed expenses reasonably supported by the record that would support a maintenance award of $15,000.00 per month.

■ To begin with, Wife's *claimed* expenses are expressly characterized as expenses "required to maintain [Wife's] previous standard of living." Although the standard of living at the time of the decree was the usual standard for an award of alimony prior to enactment of the Dissolution Act, the standard of living during the marriage is now merely a factor to be consid-

---

**5.** We reject Husband's claim that requiring him to pay a cash award improperly leaves him without sufficient liquid assets. The record reflects that Husband has for several years been able to draw cash from his business virtually at will. Further, an award of approximately equal

shares, as requested by Husband, cannot be accomplished without a cash award.

**6.** At trial, Wife revised this figure to $1,800.00/ month for lease payments alone to maintain the auto she was then driving.

ered and does not automatically establish that level of need. *McMullin v. McMullin*, 926 S.W.2d 108, 112 (Mo.App.1996). *See Brueggemann v. Brueggemann*, 551 S.W.2d 853, 857 (Mo.App.1977); *Zaegel v. Zaegel*, 708 S.W.2d 812, 813 (Mo.App.1986); § 452.335.2(1–10) RSMo 1994. In *McMullin*, we rejected the wife's contention that the standard of living during the marriage should govern the determination of her "reasonable needs" where wife entered the marriage with minimal financial resources, the union was not "of lengthy duration" (seven years), wife was not denied the opportunity to develop a career and wife was found to be capable of gainful employment. 926 S.W.2d at 113. Under such circumstances, we held that none of the factors traditionally present to justify an award based on the standard of living during the marriage were present. *Id.* Likewise in this case, Wife entered the marriage with little in the way of separate property, the marriage was not of lengthy duration, there was no evidence that Wife's brief absence from the workforce would hamper her career and Wife was expressly found to be capable of gainful employment. Thus, as in *McMullin*, none of the factors traditionally present to justify an award based on the standard of living during the marriage are established by the record.

Moreover, both parties testified that their standard of living was heavily influenced by Husband's business strategy of lavishly entertaining clients. Although the parties ate most meals in restaurants at company expense, Wife did not dispute and at least indirectly supported Husband's testimony that the purpose of this lavish lifestyle was to cultivate existing and potential clients. Wife no longer has a need to engage in such pursuits. Nor, Wife testified, is this her desire. Wife testified that she prefers to eat at home and ate out perhaps one night per week when left to her own devices. Under such circumstances, Wife cannot possibly "need" $1,500.00 per month ($50.00 per day) for food.

Approximately $10,000.00 of Wife's claimed expenses were based on the assumption that Wife would continue to live in the marital home. The trial court, however, found that Wife did not have a reasonable need to remain in such a large home. It did, however, award her the property and found that the equity in the property, even after allowing for a real estate commission, was more than $500,000.00. The award of this sum must be taken into account somewhere and it is reasonable to assume that it is sufficient to permit Wife to acquire a comfortable home, mortgage-free, with monthly utilities and maintenance expenses well below the level claimed by Wife. Eliminating these inflated expenses in turn reduces the requested amount to the neighborhood of the $15,000.00 found reasonable by the trial court. Thus, it may be safely presumed that the trial court found the bulk of Wife's remaining expenses to be reasonable. If this was the trial court's reasoning, the record does not support a finding that Wife's remaining claimed expenses are reasonable.

Although we do not propose to lengthen this opinion with a detailed discussion of every claimed expense, a few selected items bear mention. Wife claimed $3,000.00 per month for "recreation" and $3,000.00 per month for "vacations/travel," for a total of $72,000.00 per year in recreation-related expenses. As discussed above, to the extent these items are predicated on duplicating the parties' lifestyle, this is unjustified. Moreover, the record is devoid of any evidence that this extraordinary amount in any way represents what the parties spent on Wife's non-business related recreation. When questioned about the "recreation" amount, Wife testified that she would like to belong to a country club but the evidence showed that the memberships that gave Wife access to the clubs during the marriage were paid for by Husband's business and used for business entertainment. Wife did testify that the parties had taken at least two lavish, non-business trips but professed not to know the cost. Wife apparently made no differentiation between personal travel and travel with business clients in estimating expenses. In sum, the record does not support an award of anything approaching $72,000.00 per year for Wife's recreational pursuits.

■ Nor does the record support $1,500.00 per month for food, $1,000.00 per month for medical and dental expenses, $500.00 per month for visits to the beauty shop or $1,000.00 per month for "gifts." Although Wife did have a bout with cancer many years earlier, there has been no recurrence and Wife did not identify any existing health problem that would give rise to expenditures of $12,000.00 per year.[7] Wife never testified that she spent $500.00 per month at the beauty shop during the marriage and Husband, who paid the bills, testified Wife spent $23.00 per week. In view of Wife's concession that she "never saw a bill," Wife's claimed "need" of $500.00 per month for having her hair done must be dismissed as pure guesswork and is not substantial evidence. *Esmar v. Zurich Ins. Co.*, 485 S.W.2d 417, 421 (Mo.1972) (a decree is not based on substantial evidence if it is based on surmise, guesswork or speculation). Assuming for the sake of argument that one can have a "need" to make "gifts," nothing in this record supports Wife's claim that she has an ongoing "need" to make gifts of $12,000.00 per year. She will no longer be a member of the "birthday club," which was, in any event, associated with Husband's business. No other plausible explanation of this claim appears in the record.

■ We recognize that parties' statements of income and expenses are routinely admitted and relied upon without further testimony or documentary support for each individual item. Nothing in this case should be read as suggesting that such statements, properly offered and admitted in evidence, cannot serve as substantial evidence to support a finding of reasonable need in the absence of a genuine dispute. In this case, however, the amounts and types of expenses claimed are decidedly atypical and were vigorously disputed. The claims were expressly predicated on a standard, *i.e.,* the alleged standard of living during the marriage, that is not justified by the facts of this case. Wife conceded her lack of knowledge of the actual amounts expended and the amounts claimed are in many ways inconsistent with her own

testimony concerning her preferred lifestyle. To the extent Wife's claimed expenses can be compared with available records, they appear to be consistently and substantially inflated. Under such circumstances, we find that the weight to be accorded Wife's statement of income and expense is negligible and that it does not constitute substantial evidence of her reasonable needs as contemplated by the statute. The evidence does not support a finding that Wife's reasonable needs are $15,000.00 per month or anything close to that figure.

Ordinarily, this would require a remand to the trial court for new findings as to Wife's reasonable needs as guided by a proper application of the legal standards set forth herein. In this case, however, Husband does not dispute that Wife is entitled to maintenance in the amount of $7,500.00 per month ($90,000.00 per year). Thus, remand is necessary only if the evidence is sufficient to support a finding that this amount, together with income from investment of liquid amounts Wife was awarded in the decree, would be insufficient to meet Wife's reasonable needs. Based on a thorough review of the record on appeal, we hold that Wife has not shown that maintenance of $7,500.00 per month coupled with the income that must reasonably be imputed will be insufficient to satisfy all of her reasonable needs. Accordingly, we modify paragraph 14 of the judgment and order that Husband shall pay maintenance to Wife in the sum of $7,500.00 per month as and for periodic maintenance, payable $3,750.00 on the 1st and 16th of each month, effective February 1, 1995. Said maintenance shall be subject to modification.

In his final point, Husband urges that the trial court abused its discretion in ordering that the monthly maintenance awarded to Wife is to continue after Husband's death and until Wife's death or remarriage unless at his death Husband shall have in effect life insurance naming Wife as beneficiary in the amount of $1,000,000.00, in which event the obligation to pay maintenance shall cease upon Wife's receipt of the proceeds. Husband asserts that inclusion of this provision

---

**7.** Wife is eligible to continue health coverage through the plan offered by Husband's business although the extent of coverage and cost are not clearly established in the record.

was not supported by substantial evidence, is vague and unenforceable, and will potentially require that his estate be kept open indefinitely. Further, Husband complains that the amount of insurance ordered bears no rational relationship to the obligation it secures.

 Husband points out that Wife made no request that maintenance be ordered to continue beyond Husband's death or that he be required to maintain a life insurance policy for her benefit. Consequently, neither party introduced any evidence as to Husband's or Wife's life expectancies, Husband's insurability or the cost to maintain a $1,000,000.00 policy on Husband's life. The first and only discussion of the issue appears in the decree.

Husband and Wife draw our attention to two cases which discuss the issue of whether a trial court can award "posthumous maintenance." Neither, however, involved the type of award made in this case which, so far as our own research discloses, is unprecedented. The first case to address the issue was *McAvinew v. McAvinew,* 733 S.W.2d 816, 818–19 (Mo.App.1987). In that case, the original decree required the husband to pay maintenance of $400.00 per month and that he maintain wife as the beneficiary on an existing government life insurance policy in the amount of $47,500.00. That order apparently was not appealed. The husband later moved to modify the decree to eliminate his obligations to pay maintenance and to maintain insurance due to his reduction in income upon retirement. The trial court reduced the maintenance award and the amount of life insurance the husband was required to maintain but refused to eliminate either obligation. On appeal, the husband claimed, *inter alia,* that the requirement that he maintain life insurance constituted an impermissible award of "posthumous maintenance" because it necessarily contemplates that the benefits would be paid after his death. *Id.* The husband relied on § 452.370.2 RSMo, which provides, in pertinent part:

> Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future statutory maintenance is terminated upon the death of either party....

The Western District reasoned that the language "[u]nless otherwise agreed in writing or expressly authorized in the decree ..." should be read as authority for the proposition that a decree may expressly provide that an obligation to pay maintenance is not to be terminated upon the death of the obligor. 733 S.W.2d at 819. The court further found that a provision requiring a party to maintain life insurance naturally contemplates that benefits will be paid after the insured's death and thus satisfies the statutory requirement that the decree expressly provide that maintenance not be terminated upon the obligor's death. *Id.*

In *Rogers v. Rogers,* 803 S.W.2d 92, 97 (Mo.App.1990), this court noted the Western District's holding in *McAvinew* that a decree for monthly maintenance secured by insurance evidences an intent that maintenance continue after the death of the obligor. In *Rogers,* the husband appealed an award requiring him to maintain a $200,000.00 life insurance policy naming wife as beneficiary. The amount of insurance ordered far exceeded husband's maximum liability for the $75,000.00 maintenance in gross he had been ordered to pay. We held that the amount of insurance required was oppressive and remanded the case to the trial court to fashion an order requiring husband to procure reducing term insurance to secure payment of the five-year maintenance award. 803 S.W.2d at 97.

Neither *McAvinew* nor *Rogers* involved a provision that maintenance *payments* were to continue beyond the death of the obligor. Rather, in each instance, the obligor was required to maintain life insurance, the proceeds of which obviously will not be paid until after the death of the obligor. The implicit assumption that this constitutes posthumous maintenance is questionable. Although payment will occur after the obligor's death, it is not a payment by the obligor; it is a payment by an insurance company. The only payments required to be made by the obligor, the premiums on the policy, necessarily occur during the obligor's lifetime.

In contrast, the provision at issue in this case expressly requires that the obligation to make monthly maintenance payments shall

continue after the death of the obligor, terminating only upon Wife's receipt of the proceeds of a conforming policy. As Husband points out, if he proves to be uninsurable or otherwise fails to satisfy the insurance requirement, this could require that his estate be kept open at least until Wife's death or remarriage. Although it is certainly possible to interpret § 452.370.2 RSMo 1994 as authorizing a trial court to require monthly maintenance payments to continue beyond the obligor's death, this is not the only possible construction of the statute. We are loathe to ascribe to the legislature an intent to authorize provisions which could require estates to be held open indefinitely.

■ In any event, we need not decide in this case whether § 452.370.2 authorizes a trial court to require monthly maintenance payments to continue after the obligor's death. Assuming *arguendo* that such an award is permissible, it is not warranted by the record in this case. At the very least, the statute creates a presumption that maintenance will ordinarily terminate upon the death of either party. The record does not support a finding that there are any extraordinary circumstances affecting these parties that would justify a departure from the general rule. Nor is this a case which justifies a requirement that Husband maintain insurance for Wife's benefit. It was not requested by either party and there is no evidence that Husband is insurable or what the cost would be. Nor was there any evidence of the life expectancies of the parties. Thus, there is no way to gauge whether there is any rational relationship between the amount of insurance required and the amount of maintenance Wife would otherwise have received if Husband outlives her. Accordingly, we delete all language in the second sentence of paragraph 14 of the judgment following the word "modification."

The judgment is affirmed as modified. The parties shall bear their own costs on appeal.

GRIMM and HOFF, JJ., concur.