T.C. Summary Opinion 2006-128


UNITED STATES TAX COURT


CHARLES HORTON DEVERS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3227-05S.                   Filed August 21, 2006.


Charles Horton Devers, pro se.

<u>Steven W. LaBounty</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 2002, the taxable year in issue.

Respondent determined a deficiency in petitioner's Federal income tax for 2002 in the amount of $9,350.

After concessions by respondent, the sole issue for decision is whether petitioner properly deducted attorney's fees paid in 2002 as alimony under section 71(b). We hold that he did not.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time the petition was filed, Charles H. Devers (petitioner) resided in St. Louis, Missouri.

Petitioner and Nadine F. (Lundsgaard) Devers (Ms. Devers) were married in August 1973 and separated in January 2001. Ms. Devers filed a petition seeking a dissolution of her marriage to petitioner on August 1, 2001, in the Circuit Court of St. Louis County, Missouri (Family Court Cause No. 01FC-7461). A Judgment Pending Dissolution Proceeding (PDL) (sometimes referred to as an Order Pendente Lite) was filed on December 17, 2001, and required petitioner to pay $5,000 to Aaron Dubin (Mr. Dubin), attorney for Ms. Devers, "as and for attorney fees on account". Petitioner did not appeal the order. The PDL did not specify whether petitioner's obligation to pay the $5,000 would terminate upon either spouse's death. In March 2002, petitioner paid the $5,000 as ordered by the PDL.

The original dissolution proceeding, Cause No. 01FC-7461, was dismissed in July 2002 for reasons not relevant to the instant action. Petitioner himself then sought a dissolution of the marriage in the Circuit Court of St. Louis County, Missouri (Family Court Cause No. 02FC-7407, filed July 31, 2002) and an Order dissolving the Deverses' marriage was entered on October 13, 2004.

Petitioner claimed a deduction of $29,000 as alimony on his 2002 tax return.[2] A notice of deficiency was mailed to petitioner determining an income tax deficiency of $9,350. After further inquiry by respondent, it became clear that the $29,000 comprised $24,000 of maintenance paid to Ms. Devers and the $5,000 paid to Mr. Dubin. Before trial, respondent conceded the deduction for the payments to Ms. Devers and recalculated petitioner's income tax deficiency to be $1,607. Only the $1,607 deficiency corresponding to the $5,000 payment made to Mr. Dubin remains at issue.

## Discussion[3]

Section 71(a) provides the general rule that alimony payments are included in the gross income of the payee spouse; section 215(a) provides the complementary general rule that

---

[2] There is no disagreement that if the deduction were proper, 2002 would be the appropriate tax year.

[3] The issue for decision is essentially legal in nature; accordingly, we decide it without regard to the burden of proof.

alimony payments are tax deductible by the payor spouse in "an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year."

Payments to a third party on behalf of a spouse and pursuant to the terms of a divorce decree may be alimony if those payments would otherwise qualify as such. See sec. 1.71-1T(b), Q&A-6, Temporary Income Tax Regs., 49 Fed. Reg. 34455 (Aug. 31, 1984). The term "alimony" means any alimony as defined in section 71. Section 71(b) provides:

> SEC. 71(b). Alimony or Separate Maintenance Payments Defined.--For purposes of this section–
>
> (1) In general.–-The term "alimony or separate maintenance payment" means any payment in cash if–
>
> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
> (B) the divorce or separation instrument does not designate such payment as a payment which is not includable in gross income * * * and not allowable as a deduction under section 215,
>
> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>
> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in

> cash or property) as a substitute for such payments after the death of the payee spouse.

Both parties agree that petitioner's payment to Mr. Dubin satisfies the requirements set out in section 71(b)(1)(A), (B), and (C). Payment was made in cash, made pursuant to a "divorce or separation instrument" as described in section 71(b)(2)(C) and corresponding regulations, see sec. 1.71-1(b)(3), Income Tax Regs., and the payment was not ineligible for the section 71 and 215 deduction/inclusion scheme. At the time of payment, petitioner and Ms. Devers were not members of the same household. Further, petitioner appears to be in agreement that the obligation for someone to pay Mr. Dubin his fees would have survived Ms. Devers' death when he writes on page 7 of his Memorandum Brief: "Aaron Dubin would be required to collect any accrued legal fees from the estate of Ms. Devers by operation of Missouri statute." The disagreement in this case is about whether petitioner's $5,000 payment satisfies section 71(b)(1)(D); i.e., whether petitioner's own liability to pay attorney's fees as ordered by the PDL would have terminated in the event of Ms. Devers' death. See sec. 1.71-1T(b), Q&A-10, Temporary Income Tax Regs., supra at 34456. Of course, an inquiry of this kind necessitates exploring the fictional question of whether or not an amount already paid would have remained an amount to be paid had Ms. Devers predeceased

satisfaction of the obligation ordered by the PDL issued in the first, inchoate marital dissolution proceeding.  To find an answer, we must decide whether petitioner's payment to Mr. Dubin was pursuant to an obligation that would have been extinguished by Ms. Devers' death under either the terms of the PDL itself or Missouri law.  See Altmann v. United States, 89 AFTR 2d 485, 490, 2002-1 USTC par. 50,275, at 83,614 (E.D. Mo. 2001).  Given that the PDL is silent on the issue, we turn to State law.

"Although Federal law controls in determining petitioner's income tax liability * * *, State law is necessarily implicated in the inquiry inasmuch as the nature of petitioner's liability for the payment" was based in Missouri law.  Berry v. Commissioner, T.C. Memo. 2000-373, affd. 36 Fed. Appx. 400 (10th Cir. 2002); see also, e.g., Sampson v. Commissioner, 81 T.C. 614, 618 (1983), affd. without published opinion 829 F.2d 39 (6th Cir. 1987).  In Commissioner v. Estate of Bosch , 387 U.S. 456, 465 (1967), the Supreme Court addressed the means for determining State law in the context of a Federal tax case and stated:

> the State's highest court is the best authority on its
> own law.  If there be no decision by that court then
> federal authorities must apply what they find to be the
> state law after giving "proper regard" to relevant
> rulings of other courts of the State.  In this respect,
> it may be said to be, in effect, sitting as a state
> court.

With no State decision squarely on point, the Court must do its best to discern and apply what it believes to be Missouri law.  Bernhardt v. Polygraphic Co., 350 U.S. 198 (1956).

1.  Missouri Family Law

In Missouri, an award for attorney's fees does not arise out of the Missouri alimony provision.  In 1974, the State enacted the Dissolution of Marriage Act, Mo. Ann. Stat. sections 452.300-452.415 (West 2003).  Prior to that time, there was no express statutory authority for awarding attorney's fees, and such awards were generally made under the auspices of the alimony provisions.  See, e.g., Rutlader v. Rutlader, 411 S.W.2d 826, 829 (Mo. Ct. App. 1967); Knebel v. Knebel, 189 S.W.2d 464, 466 (Mo. Ct. App. 1945).  In enacting the Dissolution of Marriage Act, the State, instead, provided for three separate and distinct awards in a marriage dissolution proceeding:  (1) child support, (2) maintenance (formerly referred to as alimony), and (3) attorney's fees.  See Mo. Ann. Stat. secs. 452.340, 452.335, 452.355 (West 2003).

> The separate treatment of maintenance and child support, as one type of an award, and litigation costs and attorney fees as another type of award, demonstrates a legislative intent not to continue the authority to award attorney fees as an incident to alimony or the present substitute for alimony which is designated as maintenance.

Dyche v. Dyche, 570 S.W.2d 293, 296 (Mo. 1978).  Alimony, unlike other types of awards, is traditionally "considered to be

support-based and consequently would end upon the death of the payee spouse." Altmann v. United States, 2002-1 89 AFTR 2d 2002-485, at 2002-489, USTC par. 50,275, at 83,613. In fact, the obligation to provide maintenance specifically terminates upon the death of either party. See Mo. Ann. Stat. sec. 452.370.3 . The obligation to pay child support also is subject to specific termination provisions. See, e.g., Mo. Ann. Stat. sec. 452.340.3 (West 2003) (obligation to pay child support terminates when child dies or marries, etc.). In contrast, there is no statutory termination rule for an award of attorney's fees, suggesting that such an award would not terminate upon the death of either spouse. Caselaw also suggests that attorney's fee awards would not terminate upon the death of either spouse as such awards are enforceable directly by the attorney.

In Minor v. Minor, 901 S.W.2d 163 (Mo. Ct. App. 1995), an attorney sought reversal of a lower court decision dismissing a contempt suit against a husband who did not pay attorney's fees as ordered in a dissolution proceeding. The Missouri Court of Appeals held that a contempt action by the attorney against the nonpaying husband was entirely appropriate. According to Minor and similarly decided caselaw, because the award of attorney's fees is an independent judgment, the attorney may bring a contempt proceeding if the judgment is not satisfied; there is nothing in the Missouri statutes or caselaw to suggest that this

ability would terminate upon the death of the person for whom legal services had been rendered.[4]

2.  Validity of the Award

Petitioner argues that a final Order of Dissolution would have been required for the PDL to have any effect and that the dismissal of the first dissolution proceeding removed the court's authority to order him to pay attorney's fees.  We disagree.  It is true that a court loses jurisdiction over a dissolution action if one of the parties dies before the entry of a final Order.  See, e.g., Bilgere v. Bilgere, 128 S.W.3d 617 (Mo. Ct. App. 2004); Winters v. Cooper, 827 S.W.2d 233 (Mo. Ct. App. 1991); Parkhurst v. Parkhurst, 799 S.W.2d 159, 161 (Mo. Ct. App. 1990).  But while a court may lose jurisdiction over the dissolution action, collateral and other issues may remain properly before the court.  See, e.g., Fischer v. Seibel, 733 S.W.2d 469 (Mo. Ct. App. 1987) (reiterating that the parties are entitled to have property rights decided even though one of the parties has died); State ex rel. Weber v. McLaughlin, 157 S.W.2d 800 (Mo. Ct. App. 1942) (allowing the court to retain jurisdiction over an order to a third party to return property despite the fact that the

---

[4]  Although there is caselaw suggesting that the obligation to pay attorney's fees not yet earned but awarded prospectively on account would be subject to modification, see, e.g., Muegler v. Muegler, 784 S.W.2d 839 (Mo. Ct. App. 1990), there are no facts in this case that would suggest the $5,000 had not yet been earned by Mr. Dubin at the time petitioner was ordered to pay him.

husband had died and the dissolution action had abated). We
believe a court would retain jurisdiction over an order to
enforce an award of attorney's fees, even if Ms. Devers had died
prior to petitioner's payment, and the court in the first
dissolution proceeding did not lose its authority to make the
order simply because the case did not result in a final marital
dissolution.

In Johnson v. Johnson, 894 S.W.2d 245, 247 (Mo. Ct. App.
1995), the court wrote that an "order on a PDL * * * is a final
judgment disposing of the merits from which an appeal may be
taken. * * * Such orders are in no way dependent on the merits
of the underlying dissolution suit." Though that case concerned
a PDL award of maintenance, the same court found in an earlier
case that the principle applied to attorney's fees. See Carlson
v. Aubuchon, 669 S.W.2d 294, 297 (Mo. Ct. App. 1984). In fact,
"It is well established in Missouri that orders on motions to
allow * * * suit costs pendente lite are judgments in independent
proceedings. They stand upon their own merits and are in no way
dependent on the merits of the underlying dissolution suit."
Dardick v. Dardick, 661 S.W.2d 538, 540 (Mo. Ct. App. 1983); see
also Noll v. Noll, 286 S.W.2d 58, 62 (Mo. Ct. App. 1956).
Whether or not the case giving rise to the PDL ordering the
payment at issue ever culminated in an Order of Dissolution, the
award of attorney's fees to Mr. Dubin was made on its own merits

and, because petitioner did not appeal the award, the order was enforceable in its own right. "An order to pay attorney's fees is * * * more than a judgement for money; it is a personal order to the spouse." <u>Minor v. Minor</u>, <u>supra</u> at 165-166. Because the order to pay Mr. Dubin was a personal order to petitioner, even if Ms. Devers had predeceased payment, the order would still have been valid, petitioner's obligation to pay $5,000 would have survived, and Mr. Dubin would have had his own cause of action to collect directly from petitioner. The fact that the case giving rise to the PDL in discussion did not result in a final dissolution of the marriage is irrelevant for the inquiry at hand.

## 3. Conclusion

Although the Supreme Court of Missouri has not addressed the narrow legal issue presented in the instant case, the State's statutory scheme of the child support, maintenance, and attorney fee provisions, as well as relevant caselaw, suggests that petitioner's obligation to Mr. Dubin would not have terminated had Ms. Devers died before satisfaction of the obligation whether or not the PDL was ever followed by a Final Order and Decree of Dissolution. For that reason, and after considering all of the facts and circumstances, we hold that petitioner's deduction of the $5,000 paid to Mr. Dubin was improper as it did not meet the definition of "alimony" under section 71(b)(D).

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issue, as well as respondent's concessions,

<u>Decision will be entered for respondent in the amount of the reduced deficiency of $1,607.</u>