**Donald E. McGEHEE, Respondent–
Appellant,**

v.

**Mary Carolyn McGEHEE, Appellant–
Respondent.**

Nos. 20846, 20870.

Missouri Court of Appeals,
Southern District,
Division Two.

April 25, 1997.

James R. Sharp, Wear & Sharp, Springfield, for respondent/appellant Donald E. McGehee.

Kay S. Graff, Springfield, for appellant/respondent Mary Carolyn McGehee.

PARRISH, Judge.

Donald McGehee (husband) and Mary Carolyn McGehee (wife) both appeal the modification of their dissolution of marriage judgment. This court reverses the trial court's finding that husband overpaid maintenance. The amount of money the trial court determined husband owed wife for delinquent maintenance is increased by the amount of the credit erroneously allowed husband. The order is affirmed as modified.

The dissolution of marriage judgment was entered May 15, 1986. It dissolved the marriage and approved a separation agreement. The separation agreement was made part of the judgment. The parties were ordered "to perform each and every covenant" of the agreement. The separation agreement set apart one item of nonmarital property to wife, divided marital property, allocated responsibilities for payment of indebtedness and awarded maintenance to wife. Husband was required to pay wife's attorney fees. The part of the separation agreement that awarded maintenance states:

### MAINTENANCE

1. The Parties agree after examining all relevant factors, including the situation of the Parties at the present time, that periodic maintenance in the amount of $1,750.00 per month will be paid by HUSBAND to WIFE. Said maintenance shall be reduced by an amount received by WIFE as Social Security benefits when she becomes eligible to receive such benefits and WIFE agrees to provide evidence of said amount to HUSBAND. Maintenance will terminate upon WIFE'S remarriage or death of either party.

2. HUSBAND agrees to maintain WIFE as beneficiary on life insurance in the amount of $50,000.00 and to provide evidence of such insurance upon request.

3. HUSBAND agrees to pay to WIFE the amount of $220.00 per month to enable her to obtain medical and life insurance providing benefits at least equal to the benefits she now has available as HUSBAND'S dependent.

Both husband and wife filed motions to modify the dissolution judgment. Husband's motion was filed April 18, 1994. Wife's was filed May 12, 1994. Husband sought to terminate wife's maintenance. His motion alleged wife received medical and health insurance from her employer; that she "therefore has not needed and does not need the $220.00 per month from [husband] as ordered by the Court for that purpose." Husband requested the trial court to "enter a judgment against [wife] for those sums he has expended to provide [wife] with medical and health insurance during these periods where [wife] was receiving said insurance during the course of her employment."

Wife's motion sought an increase in the amount of maintenance provided by the dissolution judgment. The trial court found there had been a substantial and continuing change in the circumstances of the parties since the entry of the dissolution judgment. It modified the amount of maintenance by

reducing the $1,750 monthly payment to $1,275 and terminating the obligation to pay $220 per month for medical and life insurance.

The trial court found that husband's "medical and life insurance" payment of $220 per month when wife had health insurance available from her employment "resulted in a net overpayment by [husband] of $14,570.00 in maintenance payments" and awarded husband judgment against wife in that amount. Husband was found to be delinquent in making maintenance payments. The trial court found he owed "back maintenance" of $17,-434.82. The trial court concluded, "That because of offsetting amounts ... [wife] is awarded an amount of $2,864.82."

This court's review is undertaken pursuant to Rule 73.01(c). The trial court's order will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Hicks v. Hicks,* 798 S.W.2d 524, 525–26 (Mo.App.1990). If there is conflicting evidence, this court defers to the findings of the trial court. *Id.* at 526.

### *Husband's Appeal—No. 20870 .*

Husband's Points I and II are directed to the trial court's continuation of maintenance, although at a reduced amount, for wife. Husband contends the trial court erred in requiring him to continue paying maintenance to wife.

Point I alleges the trial court's finding that wife was entitled to continue to receive maintenance is "not supported by substantial evidence and is against the weight of the evidence" in that "wife is able to support herself through appropriate employment and possesses sufficient property to provide for her reasonable needs." The evidence husband relies on in support of his first point is that wife owns a house with a value of $108,000, "the mortgage on which is due to be paid off in December of 1996;" "wife has a survivorship interest" in another house worth $104,-000 that is her parents' residence; wife is employed and, in addition to income from her employment, receives income from private tutoring and giving piano lessons; and wife is eligible for social security benefits.

Point II alleges the trial court's order for husband to pay maintenance of $1,275 per month is "not based on substantial evidence and is against the weight of the evidence" in that "husband does not have the means to meet his reasonable needs while meeting the maintenance obligation for wife." The evidence husband relies on in support of his second point is that his annual income was reduced from more than $70,000 per year at the time of the dissolution of marriage to less than $35,000; that he received a housing allowance at the time of the dissolution of marriage in the amount of $21,000 per year that he no longer receives; that since the dissolution he has depleted various personal assets; and the amount he was ordered to pay wife is greater than half his current net income.

Points I and II will be discussed together.

■ The trial court found the following substantial and continuing change of circumstances in determining that the amount of maintenance husband was required to pay should be reduced:

a. [Husband's] income, including a housing allowance he received from his employer, Ozark Christian Counseling Service, has dropped from $55,017.00 at the time the decree was entered in 1986 to less than $35,000.00 at the present time due to the merging of Ozark Christian Counseling Service with his present employer, Forest Institute of Professional Psychology;

b. [Wife] is currently employed by the Springfield R–12 Public School District in which she receives medical and life insurance benefits;

c. [Wife] is currently a titled owner of two homes located at 3618 South Broadway Avenue and 4033 South Broadway in Springfield, Greene County, Missouri[,] which have a combined fair market value of in excess of $200,000.00;

d. [Wife] is currently 63 years old and is currently entitled to social security benefits of $342.00 per month plus an additional divorced spouse benefit of $143.00 per month for a total of $485.00 per month;

e. [Wife] will be entitled to social security benefits at age 65 in the amount of $395.00 plus an additional $172.00 in divorced spouse benefits for a total of $567.00 per month;

f. [Wife] receives additional income from private music lessons and tutoring.

Wife was 63 years old at the time of the modification hearing. She attended college for two years after high school. She then began working. She and husband married within a year. At the time she and husband separated, she was teaching piano in her home and working as bookkeeper for Ozark Christian Counseling Service where husband was employed. Her employment at the counseling service was terminated. She continued giving piano lessons.

Wife applied for various jobs following the separation. She became an organist for a small church that paid $70 per month. She explained:

[T]he only other thing that came to fruition was that I was hired at—through the public school system on a temporary basis ... for a three-week period of time at what was then called the Career Development Center at the old McGregor Elementary School, which was for displaced homemakers or displaced workers—people came there and worked on their GED and things of that nature. But that was merely a three-week job. Then at the end of September, I had also applied to be a teacher aide in the school system. I was finally hired as an aide at the end of September.

The parties separated in June 1985. The employment wife described began in September 1985. Wife has worked continually as a teacher's aide since that time. She initially worked part-time. She began working full-time starting in the fall of 1986. Her job is on a year-to-year basis. She learns in September of each year whether she will be hired for that school year. Enrollment determines whether aides are required. Wife told the trial court:

You report back to the school where you were assigned last year—where you worked last year in the spring—and you work as needed at the principal's direction until the numbers of the enrollment shakes down; and the only need that dictates—or the only thing that dictates—dictates the need for an aide is overcrowded classrooms and or a classroom, grades 3 and under, that are considered a split class or a combination room. And so I only work in rooms that are 31 students or more or in a classroom where there's grades 3 and under in a combination setting.

When wife first became employed as a teacher's aide, medical insurance was not provided. Later, medical insurance was provided for full-time teacher's aides. Wife did not recall when those benefits were first offered, but the first time they became available, she qualified for the insurance.

In addition to her employment as a teacher's aide, wife continues giving piano lessons. She had 11 students at the time of the hearing and, at that time, provided private tutoring for one student two hours a week.

Wife provided the trial court with the following schedule of her monthly income and expenses:

Income:

| | | |
|---|---|---|
| Salary—Springfield Public Schools | | $ 554.50 |
| Payroll deductions: | | |
| Social Security | $ 30.25 | |
| Medicare | 7.07 | |
| Fed. Withholding | 164.56 | |
| State Withholding | 0 | |
| Retirement | 27.46 | |
| Life Insurance | 5.50 | |
| Credit Union | 100.00 | |
| UNUM–LTD | 1.39 | |
| Unreimbursed Medical | 66.66 | 402.89 |
| Net pay | | $ 151.61 |
| Income from piano lessons | | 273.00 |
| Maintenance | | 1,970.00 |
| Net monthly income | | $2,394.61 |

Wife provided the trial court with an exhibit itemizing annual expenses of $29,909.06, for average monthly expenses of $2,492.42. There was also evidence in the form of a handwritten budget wife prepared shortly after she and husband separated showing her monthly expenses at that time were $2,616.02.

Issues similar to those presented in husband's Points I and II are discussed in *Wilburn v. Wilburn*, 801 S.W.2d 78 (Mo.App. 1990). *Wilburn* is an appeal from an order modifying a dissolution of marriage judgment. Mr. Wilburn, an attorney, earned $60,000 per year at the time of the dissolution of marriage in 1983. The dissolution judgment required him to pay maintenance to his former wife of $1,500 per month. At the time of the dissolution, Mrs. Wilburn worked part-time as a condominium manager earning $500 per month.

Following the dissolution of marriage, Mr. Wilburn's earnings increased to $70,000 in 1987. Then the law firm in which he was a partner dissolved. His income fell to $40,000 per year.

Mrs. Wilburn began working full-time after the dissolution. Her income increased to $18,000 in 1985. It continued to increase through 1988 when she received $24,000, after which her job was terminated. At the time of the modification hearing, Mrs. Wilburn was working part-time as manager of a law firm for which she was paid $1,000 per month. She had also begun her own property management business that was not yet realizing a profit, although she anticipated it becoming profitable in the future.

The trial court in *Wilburn* found changed circumstances so substantial and continuing as to make the original amount of maintenance awarded unreasonable. It found that Mr. Wilburn's law firm's disbandment substantially impaired his ability to support himself and meet his maintenance requirements. He was near retirement age, a factor the court held should be taken into consideration when considering his income earning capacity.

In addition to the factors that impacted Mr. Wilburn's financial circumstances, the trial court found that Mrs. Wilburn's improved capacity for earning an income was a sufficient change to warrant modification. The court concluded, however, that Mr. Wilburn's financial status did not warrant withdrawal of all financial support, holding,

"Courts must balance the ability to pay maintenance against the reasonable needs of those seeking maintenance."[1]  801 S.W.2d at 80.

In balancing the financial abilities of the parties, *Wilburn* emphasized that Mrs. Wilburn, although her work experience had improved, was not fully supporting herself at the time of the modification hearing. The court affirmed the trial court's refusal to terminate maintenance entirely—the trial court reduced the maintenance from $1,500 per month to $800 per month.

*Wilburn* supports the trial court's actions in this case. Here, as in *Wilburn*, husband's income earning capabilities declined and he liquidated assets he had acquired previously. Wife's income earning capabilities improved, but not to the extent as occurred in *Wilburn*. Importantly, although wife lived modestly and incurred living expenses in much the same amounts as she did at the time of the dissolution of marriage, she was unable to fully support herself. Weighing husband's ability to pay maintenance against wife's reasonable needs, this court does not find an abuse of discretion by the trial court continuing husband's maintenance obligation at the reduced amount of $1,275 per month. Husband's Points I and II are denied.

■ Husband's Point III contends the trial court erred in finding he owed back maintenance in the amount of $17,434.82 as of December 1995 and in awarding wife judgment in that amount; that the award is "not supported by substantial evidence and is against the weight of the evidence" in two respects. First, according to husband, there was no evidence that husband was in arrears on his required maintenance after August 1995. He further contends if he was in arrears, it was not in the amount of $17,434.82. Second, husband contends the trial court's finding was inconsistent with its determination that wife owed husband $14,570 for "overpayment" of maintenance.

---

1. In addition to Mr. Wilburn's income having decreased, he depleted other assets since the dissolution. He had "completely used up the entire capital account he accrued at his old law firm." *Wilburn*, 801 S.W.2d at 79.

■ Husband's Point III, on its face, does not comply with Rule 84.04(d). The applicable part of Rule 84.04(d) states, "The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, *with citations of authorities thereunder.*" [Emphasis added.] No authorities are cited in support of husband's Point III, nor is there any statement to the effect that the issue presented is one for which there does not appear to be precedent or any other explanation as to why citations are unavailable. *See Tindall v. Holder,* 892 S.W.2d 314, 327 (Mo.App. 1994).

After the deficiency of Point III was addressed in wife's brief, husband, in his reply brief, suggests, "As Husband's third point involves a matter of simple logic (whether the trial court correctly calculated Husband's · alleged maintenance overpayment/arrearage using Petitioner's Exhibit 3 and mathematical calculations), no citation of authority was needed or even possible." This court accepts husband's explanation of the point's variance from literal compliance with Rule 84.04(d). Husband's Point III will be reviewed on that basis with the evidence viewed in the light most favorable to the trial court's modification order. *In re Marriage of Lawry,* 883 S.W.2d 84, 86–87 (Mo.App.1994).

The modification order found husband owed back maintenance in the amount of $17,434.82. The trial court deducted $14,750, the amount of maintenance attributable to life and health insurance costs it determined husband had overpaid, and entered judgment against husband for the difference, $2,864.82.[2]

This court finds no error in the trial court's determination that husband owed back maintenance. Wife testified that since March 1995 she had received only one-half of the monthly maintenance allowance awarded by the dissolution judgment. Her Respondent's Exhibit T calculated an arrearage "as of July 31, 1995" in the amount of $8,684.82. Husband was asked if the amount shown on Respondent's Exhibit T was correct. He answered, "I don't see anything wrong with that."

The order modifying the dissolution judgment was entered December 1995. The date of the commissioner's findings and recommendations that the family court judge adopted was December 13, 1995 (the family court judge's order adopting and confirming the findings and recommendations is undated.)

Wife testified that the last maintenance payment she received from husband was sometime after March 15, 1995, for the first half of that month. She confirmed the accuracy of Respondent's Exhibit T that showed an arrearage as of July 31, 1995 of $8,684.82. Using only the $1,750 per month component of maintenance originally awarded wife, the additional arrearage for the months of August through December, five months, totals $8,750.[3] Adding that amount to the arrearage shown by Respondent's Exhibit T through July 31, 1995, would produce the amount of the total arrearage the trial court found:

| | |
|---|---|
| Arrearage through July 31 | $8,684.82 |
| Arrearage August through December | 8,750.00 |
| Total arrearage | $17,434.82 |

Husband's Point III is denied.

*Wife's Appeal—No. 20846*

Wife's Point I asserts the trial court erred in finding her maintenance should be reduced; that the finding was not supported by substantial evidence and was against the weight of the evidence because there was no substantial change of her circumstances since the dissolution judgment was entered. She contends her earning ability and employment

2. The trial court's use of the term "judgment" in identifying the amount of husband's arrearage for unpaid maintenance is not questioned in this appeal. The determination of the amount owed is not a new judgment. It is a statement of the amount of husband's delinquency based on the maintenance provision in the original dissolution judgment.

3. The use of only the $1,750 component in ascertaining the arrearage for August through December is consistent with the trial court's finding, discussed *infra,* that husband's payment of the $220 increments were "overpayments" of maintenance.

is still uncertain; the real estate she owns does not produce income; social security benefits, when she begins to draw them, will further reduce the maintenance her former husband is required to pay; her reasonable expenses have not decreased.

Wife points only to her circumstances in asserting the trial court erred in decreasing the amount of maintenance she is to receive. The trial court based its determination that there was a substantial and continuing change of circumstances on wife's and husband's circumstances. It pointed to husband's substantial reduction in income "from $55,017.00 at the time the decree was entered in 1986 to less than $35,000.00 at the present time due to the merging of Ozark Christian Counseling Service with his present employer, Forest Institute of Professional Psychology."

All factors that the trial court set forth in its modification order—husband's decreased income as well as wife's improved earning capacity—were proper considerations in determining if a reduction in maintenance was appropriate. *Schoolcraft v. Schoolcraft*, 869 S.W.2d 907, 909 (Mo.App.1994). Husband's ability to pay maintenance cannot be disregarded. *Id.; Wilburn v. Wilburn*, 801 S.W.2d at 79–80. Husband's ability to pay as well as wife's needs were properly considered in determining if maintenance was to continue to be paid and, upon determining it was, in ascertaining the amount of maintenance to award.

Husband's salary in 1986 was in excess of $55,000. His salary increased steadily until 1994, after which it was reduced to less than $35,000. He also lost the housing allowance he had previously received. There was evidence that his income was not likely to increase in view of his approaching retirement age and an unavailability of additional teaching hours that he could fill.

■ Wife argues, nevertheless, that husband did not plead reduction in his income as a substantial change in circumstances in his motion to modify the dissolution judgment. She points to the statement in *Null v. Null*, 746 S.W.2d 655, 656 (Mo.App.1988), "A

court's power to modify a decree is dependent upon proper application being made." Wife says husband did not make proper application since he failed to allege reduction in his income as a basis for reducing his maintenance obligation. Wife objected, on this basis, to evidence at trial of husband's reduction in income. Her objection was overruled.

Husband's motion to modify the dissolution judgment was filed April 18, 1994, before his income declined. Husband does not explain why he did not amend his motion to modify accordingly. Regardless, § 452.370.1 [4] states:

> In a proceeding for modification of any ... maintenance award, the court, in determining whether or not a substantial change in circumstances has occurred, shall consider all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse or other person with whom he or she cohabits, and the earning capacity of a party who is not employed.

The trial court appropriately considered husband's declining income in reviewing his financial resources. Additionally, the trial court considered the earnings of husband's present wife in assessing the impact his loss of income had on living expenses that were shared. Wife's Point I is denied.

Point II in wife's appeal contends the trial court erred in finding husband's reduced income was a substantial change of circumstances; that its finding was not supported by substantial evidence and was against the weight of the evidence because husband deposited "some $89,000.00" in bank accounts between January 1, 1995, and July 31, 1995, and the contention that husband's income was reduced "was beyond the scope of the pleadings."

The issue with respect to consideration of husband's reduced income being "beyond the scope of the pleadings" needs no further discussion. As pointed out with respect to wife's Point I, consideration of husband's reduction in income was appropriate. § 452.370.1.

4. References to statutes are to RSMo 1994.

■ The trial court heard evidence that husband deposited $89,000 in bank accounts in 1995 during the months of January through July. After going over banking records with husband, wife's attorney asked, "So as I figure this, Dr. McGehee, in that period of time, you and your [present] wife had deposited some $89,000 in the bank." Husband answered, "Probably so. Yes, ma'am. If that's what the records show."

Husband told the trial court he secured loans during that time, including loans on his insurance. He told the trial court he used money that was deposited to pay bills, including paying for household remodeling. Husband explained that money reflected by the bank records came from his salary, his wife Sharol's salary, savings, loans and retirement accounts.

Husband's present wife, Sharol McGehee, was asked how she and husband coped with the sudden loss of income they experienced. She answered, "With denial at first. We tried, first, borrowing against some insurance policies to get us through the—what we thought was a temporary period until we finally realized that that wasn't going to work, and that's when we started selling all of our toys, so to speak." She explained that she and husband disposed of a "condominium at the lake", a boat and quit taking trips and participating in other entertainment.

In finding that a substantial and continuing change of circumstances occurred in that husband's income dropped from $55,017 to less than $35,000, the trial court obviously believed husband's explanation concerning the source of the $89,000 reflected by his banking records. This court defers to the trial court with respect to issues of credibility and the weight assigned the testimony of particular witnesses. *Hubbs v. Hubbs,* 870 S.W.2d 901, 909 (Mo.App.1994); *In re Marriage of Tappan,* 856 S.W.2d 362, 366 (Mo. App.1993).

There was substantial evidence that husband's income was substantially reduced; that this was a substantial and continuing change of circumstances that rendered the original maintenance award unreasonable. Wife's Point II is denied.

Point III of wife's appeal is directed to paragraphs 4, 5 and 6 of the trial court's findings. The findings state:

.　　.　　.　　.　　.

4. The Court further finds that [husband] relied to his detriment on [wife's] representations that she was unable to receive medical insurance coverage at her place of employment and that the cost of providing a private policy of medical insurance would be $220.00 per month and that [husband] would be given credit should [wife] be later able to obtain medical insurance at a reduced rate.

5. [Wife] enrolled in a policy of health insurance provided by her employer in September, 1988 but failed to inform [husband] of the same.

6. As a result of [wife's] willful failure to inform [husband] of the availability of her enrollment in the aforesaid policy of health insurance has resulted in a net overpayment by [husband] of $14,750.00 in maintenance payments as per Petitioner's Exhibit 3.

■ Wife's Point III claims "[t]he trial court erred in finding that husband relied to his detriment on representations that his obligation to pay $220.00 per month to wife for payment of medical insurance premiums in that the finding is not supported by substantial evidence, and/or is against the weight of the evidence, in that the decree of dissolution did not contain any provision requiring wife to reduce the amount or notify the husband."

The trial court's task was to construe the maintenance provision of the dissolution judgment. General rules of construction applied. *Missouri Federation of the Blind v. National Federation of the Blind of Missouri, Inc.,* 546 S.W.2d 182, 186 (Mo.App. 1976). Words and clauses must be construed in accordance with their natural import. *Id.*

The part of the maintenance provision of the dissolution judgment that the trial court construed in determining husband had overpaid maintenance in the amount of $14,750 is the paragraph that states:

HUSBAND agrees to pay to WIFE the amount of $220.00 per month to enable her to obtain medical and life insurance provid-

ing benefits at least equal to the benefits she now has available as HUSBAND'S dependent.

It was a provision in the separation agreement that was made part of the dissolution decree. As stated in wife's Point III, neither this provision nor any other part of the dissolution judgment required wife to notify husband if she secured health or life insurance coverage through a source other than her independent purchase.

The section of the judgment denominated "MAINTENANCE" consists of three paragraphs. The first imposed the duty on husband to pay $1,750 "periodic maintenance" to wife. The second imposed the duty on husband to maintain a life insurance policy in the amount of $50,000 with wife as the beneficiary and "to provide evidence of such insurance upon request." The third imposed the duty on husband to pay wife an additional $220 per month, explaining this amount would "enable her to obtain medical and life insurance providing benefits at least equal to the benefits she now has available as HUSBAND'S dependent."

Had husband wished to impose a contractual duty in his and wife's separation agreement for wife to notify him in the event health insurance became available to her from a source other than her independent purchase, he should have assured that the agreement contained such a provision. The separation agreement does not so state. The fact that it does not is not shocking in that maintenance is directed to present needs. It is seldom conditioned on future events. As this court stated in *In re Marriage of Runez*, 666 S.W.2d 430 (Mo.App.1983):

> Maintenance should not be conditioned on future happenings unless the evidence shows that the circumstances of the parties would likely change in the future. *In re Marriage of Wofford*, 589 S.W.2d 323, 327 (Mo.App.1979).... If there is no evidence of a party's future improvement in financial prospects, no decree of maintenance for a limited duration should be entered; it should be of unlimited duration, the amount of which might be subject to modification if the party's financial condition should improve. *Poague v. Poague, supra*,

579 S.W.2d [822] at 824 [(Mo.App. 1979)]. See also, *In re Marriage of Cornell*, 550 S.W.2d 823, 828–829 (Mo.App.1977).

*Id.* at 433–34.

Wife's Point III is granted. The evidence did not support the trial court's finding that husband was entitled to notice of wife's insurance status. As there was no duty imposed on wife to notify husband, he cannot rely on her failure to do so as a basis for contending he overpaid maintenance. The trial court's finding to the contrary is erroneous. The finding that there was "a net overpayment by [husband] of $14,750.00 in maintenance payments" is likewise erroneous. Reduction of husband's arrearage of maintenance by that amount was in error and must be reversed.

Wife's Point IV asserts the trial court erred in finding husband should be allowed credit for the $14,750 he contended was overpaid by reason of the requirement that maintenance included $220 per month to enable wife to acquire life and health insurance. This was addressed in determining wife's Point III. Point IV is granted.

Point V in wife's appeal is directed to the trial court's denial of her request for attorney fees. She contends the trial court erred in not granting attorney fees because she had exhausted her savings in defending the action and did not have sufficient income to pay the attorney fees.

Section 452.355.1 permits a trial court to award attorney fees in a modification proceeding. Trial courts are vested with broad discretion in awarding attorney fees and such an award is reviewable only for an abuse of discretion. *Lamont v. Lamont*, 922 S.W.2d 81, 86 (Mo.App.1996). To show an abuse of discretion the complaining party must show that the trial court acted "clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Ansevics v. Cashaw*, 881 S.W.2d 247, 250 (Mo.App.1994).

Wife requested the trial court to order husband to pay her attorney fees of $4,131. There was evidence that wife had been employed full-time since 1986. She also

taught piano lessons in her home for which she received remuneration. She provided tutoring for one student the summer before the evidentiary hearing on the motions to modify the dissolution judgment. She had a savings with a balance of more than $8,000, notwithstanding that she had been withdrawing funds during the time husband ceased paying maintenance. Her savings had not been depleted as she now argues.

Wife had sufficient funds with which to pay her attorney fees. This court finds no abuse of discretion by the trial court's denial of her request for attorney fees. Point V is denied.

### Disposition

The trial court's finding that husband overpaid maintenance in the amount of $14,570 and its order for wife to repay that amount is reversed. The amount the trial court determined husband owed is amended to eliminate the offset of $14,570 granted husband. The amount husband was adjudged to owe for back maintenance is increased to $17,434.82. The order modifying the dissolution judgment, as modified, is affirmed.

CROW, P.J., and SHRUM, J., concur.

