**Patricia Ann McVicker BROOKS, Respondent,**

v.

**Charles Stephen BROOKS, Appellant.**

**No. WD 53621.**

Missouri Court of Appeals, Western District.

Dec. 16, 1997.

Betty K. Wilson, Columbia, for respondent.

Milt Harper, Columbia, for appellant.

Before SPINDEN, P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Charles Stephen Brooks appeals from the judgment of the Circuit Court of Boone County modifying his maintenance obligation to the respondent, Patricia Ann McVicker Brooks.

The marriage of the parties was dissolved on July 23, 1992, in the Circuit Court of Boone County, wherein respondent, *inter alia*, was awarded maintenance from appellant in the amount of $1,200. On September 18, 1995, respondent filed a motion to modify for increased child support, a change in the allocation of the tax exemption for one of the parties' minor children, and for attorney fees. Appellant filed an answer and a counter-motion seeking a termination of, or in the alternative, a reduction of maintenance and an accounting for child support paid. On October 21, 1996, after hearing evidence, the Honorable Gene Hamilton entered judgment modifying the court's dissolution decree, which judgment, *inter alia*, reduced the maintenance from appellant to respondent to $615 per month.

On appeal, appellant claims that the trial court erred in ordering maintenance of $615 in that in calculating its award, it erroneously

determined the amount of respondent's reasonable and allowable monthly expenses.[1]

We reverse and remand.

## Facts

The marriage of Patricia Ann McVicker Brooks, respondent, and Charles Stephen Brooks, appellant, was dissolved on July 23, 1992, in the Circuit Court of Boone County with appellant ordered, *inter alia*, to pay child support to respondent in the amount of $506.66 per child [2] and maintenance of $1,200 per month.

On September 18, 1995, respondent filed a motion to modify for increased child support, a change in the allocation of the tax exemption for one of the parties' minor children, and for attorney fees. She filed with her motion a statement of income and expense. The total monthly expenses shown in her statement was $4,963 per month. On November 8, 1995, appellant filed an answer to respondent's motion and a counter-motion seeking a termination of, or in the alternative, a reduction of maintenance and an accounting for child support that had been paid.

The motion and counter-motion were heard on June 26, 1996, and on September 10, 1996. At trial, respondent testified that some expense items as reflected in her statement had changed or were incorrect.

Respondent testified that she writes checks for almost everything she purchases. In January, 1996, her checks totaled $2,954.04. The February checks totaled $4,731.07, and, the checks from March totaled $4,029.55. During these months, an average of $3,904.88 was paid for expenses.

The trial court found that respondent's gross monthly income included $3,633 per month from her salary, $1,407 per month from child support and $200 from an emancipated child, for total income of $5,240 per

---

1. Initially, appellant also appealed from the judgment awarding respondent modified child support of $1,407 per month. However, prior to oral argument, he dismissed his appeal as to this issue.

2. "Per child" support orders are not in keeping with the mandate of Rule 88.01 and Form 14 and
should not be entered. Presumed correct child support amounts calculated pursuant to Form 14 are calculated and expressed in the aggregate, not per child. Rule 88.01; Civil Procedure Form 14. *Shiflett v. Shiflett*, 954 S.W.2d 489, 492–494 (Mo.App. 1997); *see also, McCreary v. McCreary*, 954 S.W.2d 433, at 455–56 n. 1 (Mo.App.1997).

month. The trial court found that her monthly expenses were $4,963 per month as shown on her statement of income and expense. The court found additional expenses of $891.43 per month, including $149.62 paid into her retirement fund. After subtracting what it found to be the amount of respondent's reasonable and allowable monthly expenses from the amount it determined to be her gross monthly income, the court found respondent lacked $615 per month to support herself and ordered maintenance from appellant in that amount.

This appeal follows.

## Standard of Review

■ We must affirm a trial court's judgment modifying a decree of dissolution of marriage unless there is no substantial evidence to support it; it is against the weight of the evidence; or it erroneously declares or applies the law. *Lamont v. Lamont*, 922 S.W.2d 81, 83 (Mo.App.1996); *Theilen v. Theilen*, 911 S.W.2d 317, 318 (Mo.App.1995). As to maintenance orders, the trial court is granted broad discretion, and "[t]he evidence is viewed favorable to the decree, disregarding evidence to the contrary and deferring to the trial court even if the evidence could support a different conclusion." *Allen v. Allen*, 927 S.W.2d 881, 885 (Mo.App.1996). We will not reverse the trial court's award of maintenance absent an abuse of discretion. *McMullin v. McMullin*, 926 S.W.2d 108, 111–12 (Mo.App.1996). The award of maintenance is not one of unregulated discretion. *Bybee v. Bybee*, 879 S.W.2d 793, 795 (Mo. App.1994). Although maintenance awards are within the sound discretion of the trial court, such awards cannot stand without evidence to support it. *Id.; Wofford v. Wofford*, 858 S.W.2d 843, 844 (Mo.App.1993) (citations omitted).

## I.

■ Section 452.370.1 authorizes a court to modify maintenance upon a showing of changed circumstances so substantial and continuing as to make the terms of the original decree unreasonable. *Leslie v. Leslie*, 827 S.W.2d 180, 182 (Mo. banc 1992). In

determining modified maintenance, § 452.370.1 provides in pertinent part that:

1. Except as otherwise provided in subsection 6 of section 452.325, the provisions of any decree respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable. In a proceeding for modification of any child support or maintenance award, the court, in determining whether or not a substantial change in circumstances has occurred, shall consider all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse or other person with whom he or she cohabits, and the earning capacity of a party who is not employed.

§ 452.370.1. Here, the trial court made the required changed circumstances finding pursuant to this section, which finding the respondent does not appeal, and accordingly, ordered modification of appellant's maintenance obligation to respondent. As to appellant's appeal, he does not contest respondent's entitlement to maintenance, but only the reasonableness of the $615 awarded. If a spouse is entitled to maintenance, then the only determination is the reasonableness of the amount. *Jung v. Jung*, 886 S.W.2d 737, 740 (Mo.App.1994). In attacking the reasonableness of the trial court's maintenance award, appellant complains of the amount of respondent's monthly expenses the trial court allowed in calculating its maintenance award to respondent. Thus, the issue for us to decide here is whether the trial court's award of maintenance to respondent, given her allowable expenses, was factually and legally reasonable.

■ In determining the amount to award for maintenance in a modification proceeding under § 452.370, the trial court may, but is not required to, consider the factors found in § 452.335[3], just as if the trial court was determining an original maintenance award. *Smith v. Smith*, 632 S.W.2d 91 (Mo.App. 1982). The factors in § 452.335 are as follows:

**3.** All statutory references are to RSMo 1994, unless otherwise indicated.

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

§ 452.335.2.

The trial court here predicated its maintenance award on the fact it found that respondent's reasonable needs exceeded the amount it found for her available financial resources. Thus, in calculating and awarding maintenance, the trial court subtracted what it found to be the amount of respondent's reasonable and allowable monthly expenses, $5,855, from the amount it determined to be her gross monthly income, $5,240, arriving at a maintenance figure of $615. The trial court determined respondent's monthly expenses by adding expenses claimed by her in her income and expense statement, in the amount of $4,963, and additional expenses not reflected in the statement, in the amount of $891.43 per month, for a total of $5,854.43. It is apparent from the record that the trial court rounded upward respondent's monthly expenses by 57 cents to $5,855 in calculating maintenance. The trial court determined that respondent's total gross monthly income was $5,240, which figure included $3,633 in salary, $1,407 in child support from the appellant, and a $200 monthly contribution from her emancipated son who lives with respondent.

A reading of appellant's Point Relied On and the argument thereon reveals that he has two complaints: (1) that certain expenses of the respondent that were allowed by the trial court in calculating and awarding maintenance were not supported by substantial evidence or were against the weight of the evidence in that the amounts of the expenses in question, as testified to by respondent, were different than the amounts claimed in her income and expense statement, on which the trial court relied, in part, in determining her monthly expenses; and, (2) that the trial court erroneously declared and applied the law in calculating and awarding maintenance in that it allowed respondent as expenses three expenses which were not allowable as a matter of law. We will address these two complaints separately.

## A. Expenses Not Supported by the Evidence

On the issue of maintenance, the respondent submitted her income and expense statement and testified on direct and cross-examination as to her reasonable monthly expenses. As part of appellant's cross-examination of respondent, appellant's counsel offered respondent's statement, which was admitted by the court. As to certain expenses listed in her statement, the record reflects that the respondent testified on cross-examination to contrary amounts. On this basis, appellant claims that in determining maintenance, the trial court should not have allowed these expenses. As stated, *supra*, the record clearly reflects that in calculating the amount of maintenance respondent required to support herself, the trial court took her gross monthly income and subtracted the amount of expenses allowed. Thus, for every dollar of expenses allowed respondent by the trial court, the court's maintenance award to her was increased in a like amount. The dispute then over the reasonableness of the amount of maintenance awarded respondent is, in part, centered around whether there was sufficient evidence to support the monthly ex-

penses allowed by the trial court in calculating its maintenance award to her.

In evaluating the merits of a party's claimed expenses, the trial court judges the credibility of witnesses and evaluates the merits of the expenses claimed. *Schroeder v. Schroeder,* 924 S.W.2d 22, 26 (Mo.App.1996). As to maintenance, the party requesting it has the burden of showing need before maintenance may be awarded. *Carpenter v. Carpenter,* 935 S.W.2d 89, 92 (Mo.App.1996). An award of maintenance cannot stand without evidence to support it. *Wofford,* 858 S.W.2d at 844.

To prove expenses claimed, "statements of income and expenses are routinely admitted and relied upon without further testimony or documentary support for each individual item." *M.A.Z. v. F.J.Z.,* 943 S.W.2d 781, 790 (Mo.App.1997). As such, we do not suggest that "such statements, properly offered and admitted in evidence, cannot serve as substantial evidence to support a finding of reasonable need in the absence of a genuine dispute." *Id.* However, where the amounts and types of expenses claimed by a party seeking maintenance are disputed; the party at trial concedes his or her lack of knowledge regarding the actual amounts of the claimed expenses; and, the party testifies inconsistently as to the amounts of expenses claimed in his or her income and expense statement, the weight to be accorded to the statement is negligible and does not constitute substantial evidence of reasonable needs. *Id.* In an analogous situation, although it dealt with child support not maintenance, the Supreme Court of Missouri was recently confronted with the issue of whether the trial court, when calculating child support, properly relied on the amount indicated as the mother's gross monthly income in her Form 14 submitted in March of 1996, when an affidavit, which was filed in April of 1996, listed her gross monthly income at a higher amount. *Buckner v. Jordan,* 952 S.W.2d 710, 712–13 (Mo. banc 1997). The court held there that where the trial court relied on the figure from the Form 14, rather than on the more recent affidavit, the judgment of the trial court must be reversed as being against the weight of the evidence. *Id.*

Here, the respondent's income and expense statement, which the trial court used in determining her monthly expenses, was filed nine months prior to the first day of trial and one year before the final hearing. Appellant contends that at trial the respondent testified in several instances to amounts different from the amounts listed in her income and expense statement. Thus, he argues that the trial court should have recognized this inconsistency and not have relied on the amounts claimed in respondent's statement in calculating and awarding her maintenance.

As to disputed expenses of respondent, the appellant first contends that the trial court's use in calculating maintenance of respondent's mortgage figure of $1,625 per month, as claimed in her income and expense statement, was not supported by the evidence, because she testified at trial that her mortgage payment was actually lower than this amount. In this regard, appellant argues that respondent's monthly mortgage amount was actually only $1,500 per month, based on her testimony at trial that her payment was $750 every two weeks and her agreement with appellant's counsel on cross-examination that the correct amount was $1,500 per month. We disagree.

Respondent's claim that her mortgage payment was $750 every two weeks was never conceded by her to be incorrect. Using this figure of $750 every two weeks and multiplying it by twenty-six payments, to reflect an annual amount, and then averaging this amount over twelve months, respondent's monthly mortgage payment was, in fact, $1,625 per month as claimed in her statement. The confusion over the mortgage payment stems from respondent's testimony wherein she agreed with appellant's trial counsel that her monthly mortgage payment was $1,500. However, this resulted from a mathematical miscalculation by respondent and appellant's trial counsel as to how a payment of $750 every two weeks would compute on a monthly basis. Obviously, both she and appellant's counsel mistakenly determined the monthly payment to be $1,500 per month by simply multiplying $750 by two, which is incorrect. Thus, we find that as to

her mortgage payment being $1,625 there was no actual conflict between respondent's income and expense statement and her testimony, and the trial court's use of this expense figure in calculating its maintenance award was not error.

■ Appellant next contends that the amount listed in respondent's statement for auto taxes and licenses was not supported by the evidence. Although respondent's statement listed $66 per month for these expenses, she testified on cross-examination that the amount could be incorrect and could not explain how she arrived at that figure. Since the respondent conceded she did not know how she arrived at the $66 figure listed in her statement and her lack of knowledge as to the actual amount she did expend monthly for auto taxes and licenses, the trial court should not have accorded her statement or testimony any significant weight regarding this expense. *M.A.Z.*, 943 S.W.2d at 791. Nonetheless, the record reflects that the trial court allowed this expense in the amount of $66 in calculating and awarding maintenance. Thus, because we find that the evidence did not support the allowance of this expense, *Buckner*, at 712–13, the trial court erred in relying on it in calculating maintenance.

The appellant next contends that the trial court's expense allowance of $50 in beauty shop expenses for the two minor children as listed in her statement was not supported by the evidence. In her statement, respondent included $24 for the children's barber shop expenses, $50 for her beauty shop expenses, and $50 for the children's beauty shop expenses. Appellant argues that the amount included in respondent's statement for the two minor children's beauty shop expenses is obviously a duplicate expense of the respondent's. However, respondent never testified inconsistently with this expense amount nor did appellant present any evidence to the contrary. Appellant's dispute as to this expense is simply based on an inference he was asking the trial court to draw. Thus, respondent's statement could have served as substantial evidence to support an expense allowance of $50 monthly for beauty shop expenses for the two minor children, *M.A.Z.*, 943 S.W.2d at 791, and the allowance of this amount as a reasonable expense in calculat-

ing and awarding maintenance was supported by the evidence and was not error.

Finally, the appellant contends that the amount of the respondent's claimed expenses for car insurance, housecleaning, extracurricular activities, and installment contract payments were not supported by the evidence. In this respect, the respondent testified that these expenses were actually lower than the amounts claimed in her statement. Thus, the respondent conceded at trial that her actual expenses for the items in question were lower than what she had claimed in her statement. As such, as to these expenses, the trial court should have accorded little weight to the respondent's income and expense statement. *Id.* However, the record reflects that the trial court did accept the amounts claimed in respondent's income and expense statement for these expenses and relied on them in calculating maintenance, while ignoring her testimony at trial. As such, we find that the allowance of the expenses in question was not supported by the evidence, and the trial court erred in calculating and awarding maintenance while relying, in part, on respondent's statement as to these expenses. *Buckner*, at 712–13.

In summary, as to whether the record supports the allowance of respondent's expenses as disputed by appellant, we find that as to some of the disputed expenses discussed, *supra*, it does not. The record reflects that the trial court abused its discretion and erred in calculating and awarding maintenance of $615 per month to respondent in that, in doing so, it relied on certain monthly expense figures of respondent which were not supported by the evidence. *Wofford*, 858 S.W.2d at 844. Thus, we must reverse the trial court's judgment awarding maintenance to respondent in the amount of $615 per month and remand the cause to it with instructions to recalculate and award reasonable maintenance to respondent consistent with this opinion.

## B. Expenses Not Allowable

■ In addition to his assertion that the trial court erred in calculating and awarding maintenance because respondent's expenses allowed by the trial court were not supported

by the evidence, appellant also asserts that the trial court erred in calculating its award of maintenance in that it erred when it declared and applied the law in allowing respondent monthly expenses which should have been excluded. " 'Reasonable needs' is the standard for determining which expenses are allowable in determining a maintenance award." *Allen*, 927 S.W.2d at 888; *see also*, § 452.335.1(1); and *Roberts v. Roberts*, 810 S.W.2d 65, 66 (Mo.App.1990) (holding that it is an abuse of discretion for the trial court to award maintenance to a spouse who has not shown the requisite need for support). Thus, the issue for us to decide is whether the allowed expenses in question here were, under the applicable law, reasonable needs of the respondent, and thus, properly allowable by the trial court in calculating its award of maintenance.

First, the appellant contends that the $58 per month claimed as medical and dental needs for the minor children in the respondent's income and expense statement was improperly allowed as a reasonable need of respondent when calculating maintenance. The appellant disputes the allowance of this expense because the decree already ordered him to pay, in addition to his monthly child support payment, all medical and dental expenses of the children which were not covered by insurance, which he is required by the decree to carry at his expense. Appellant argues that the court, by including the uncovered medical and dental expenses for the children as a reasonable expense of the respondent in calculating and awarding maintenance, was requiring him to pay for these expenses twice, once as a form of child support, and once as a form of maintenance. We agree. A review of the decree indicates that appellant is, in fact, obligated to pay for the minor children's medical and dental expenses not covered by insurance. Because the appellant is already obligated to pay for medical and dental expenses as a form of child support, *see Adelman v. Adelman*, 878 S.W.2d 871, 873 (Mo.App.1994), it is only logical that he cannot be required to make these payments a second time as a form of maintenance. Thus, we find it was error for the trial court to allow and include the parties' minor children's medical and dental expenses as a reasonable monthly expense of

the respondent when calculating and awarding maintenance to her.

The appellant next contends that the trial court improperly allowed a monthly expense of respondent's charitable contributions to her church in the amount of $120 per month as claimed in her income and expense statement. In that regard, appellant argues that the allowance of this discretionary expenditure when determining the respondent's monthly expenses was not a reasonable need. However, the law is that modest charitable contributions which were engaged in throughout the course of the marriage may be included when figuring the wife's reasonable expenses. *Smith v. Smith*, 739 S.W.2d 562, 565 (Mo.App.1987). Thus, if the respondent made contributions to her church during the marriage, the trial court did not err in allowing such an expense when calculating maintenance. In this regard, the record is totally devoid of any evidence demonstrating the amount, if any, of the charitable contributions that the respondent made to her church during the parties' marriage. Consequently, we are unable to determine whether the allowance of a charitable contribution expense was proper in any amount in determining respondent's reasonable needs to calculate maintenance in the modification proceeding. In light of this fact, on remand, the trial court is free to hear additional evidence on this issue.

Finally, appellant challenges the trial court's allowance of $149.62 as a reasonable monthly expense for payments made by respondent to her retirement fund. Although respondent did not claim this as an expense in her income and expense statement, it was shown as a payroll deduction and was included by the trial court as an expense in calculating the maintenance award to respondent. The respondent claims that the contribution to her retirement fund was a reasonable need, and thus, qualified as an allowable expense for determining maintenance. In other words, respondent is contending that a "reasonable need," in the context of calculating maintenance, includes providing for her future support, which logically is the purpose of retirement funds. Given the fact that the trial

court determined respondent's maintenance by subtracting what it found to be her reasonable monthly expenses from her gross monthly income, the trial court, by allowing respondent's retirement fund payment as an expense, was requiring appellant to contribute to respondent's future support. The appellant contends that this was error. Thus, the issue for us to decide is whether a former spouse can be required to contribute, in the form of present maintenance, to an ex-spouse's retirement fund to provide for his or her future support.

The issue presented appears to be one of first impression in Missouri. And, after researching other jurisdictions, we note that no other jurisdiction has apparently addressed this precise issue either. In any event, as to this issue and for the reasons discussed, *infra*, we hold that a former spouse cannot be required to make maintenance payments, which are specifically allocated for contributions to a retirement fund to provide for the future support of his or her ex-spouse.

First and foremost, maintenance was never intended by our legislature to provide for a spouse's retirement. Providing for a party's spouse's retirement is totally contrary to the purpose of maintenance. As to the purpose of maintenance, which replaced alimony pursuant to the Dissolution of Marriage Act of 1973, the Supreme Court of Missouri stated the following:

In 1973, the General Assembly adopted an act permitting dissolution of marriage in Missouri. Properly dubbed a 'no fault' divorce law, *see generally*, Krauskopf, *Maintenance: Theory and Negotiation*, 33 J.Mo.Bar (1977), the new act repealed Missouri's statutes permitting divorce and changed the philosophical moorings for support for a former spouse.

Under the new act, courts no longer award alimony; instead, courts award maintenance. The distinction is more than one of semantics.

Alimony served 'as the equivalent of that obligation for support which arises in favor of the wife out of the marriage contract.' *Nelson v. Nelson*, 282 Mo. 412, 221 S.W. 1066, 1067 (banc 1920) (*Nelson I*). 'In this limited sense [alimony] may be deemed an assessment of damages in [the wife's] favor

for breach of the contract by the husband.' *Id.* 221 S.W. at 1069.

Maintenance, on the other hand, proceeds from 'the need for reasonable support by one spouse from the other after the disruption of the marriage.' [*Nelson v. Nelson II]*, 720 S.W.2d [947], 952 [(Mo. App. 1986)]. . . . Thus, 'maintenance issues for support and *only* for support—and then, until the dependent spouse achieves a reasonable self-sufficiency.' *Nelson II*, 720 S.W.2d at 952.

*Cates v. Cates*, 819 S.W.2d 731, 734–35 (Mo. banc 1991). In addition, this court has stated:

The Dissolution of Marriage Act's conceptual emphasis on marriage as a partnership is vividly demonstrated by § 452.335, supra. The sum of the factors enumerated therein for consideration in awarding maintenance bespeak of a legislative intent to terminate the 'marital partnership' and completely avoid, or in any event minimize to the extent possible, any continuing financial dependency between spouses. As observed in *Brueggemann v. Brueggemann*, 551 S.W.2d 853, 856–57 (Mo.App.1973 [sic]), '[s]pecification in the statute of the earning capacity of the spouse seeking maintenance and the division of property as the principal means of provision for the reasonable needs of the spouse seem to reflect a legislative intent to avoid, if possible, the imposition of continuing financial obligation to the spouse seeking maintenance.'

*Weiss v. Weiss*, 702 S.W.2d 948, 955 (Mo. App.1986). Clearly, the purpose of maintenance was to provide for present support based on present circumstances. It was never intended to provide for a spouse's retirement. Requiring a former spouse to contribute to an ex-spouse's retirement would impose a continuing financial obligation on the obligor spouse to support his or her ex-spouse and promote continuing financial dependency between them, both of which fly in the face of the statutory purpose of maintenance. *Cates*, 819 S.W.2d at 734. Although there arguably may be a salutary reason for ordering maintenance, in part, to provide for a spouse's retirement, which we discuss, *in-*

*fra,* it would require a change in the statutory purpose of maintenance. Such a change in purpose would be a major shift of policy, which logically should come by way of legislative action, rather than by judicial fiat.

Second, a forced contribution by appellant to respondent's retirement fund would also run contrary to § 452.370.3, which states, in pertinent part, that "[u]nless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future statutory maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance." Here, no such written agreement nor decretal provision exists. Thus, appellant has no obligation to pay maintenance to respondent after respondent's remarriage or appellant's death. As such, if appellant was required to pay maintenance to respondent, which was intended, in part, to enable her to contribute to her retirement fund to provide for her future support, appellant is potentially being required to contribute to respondent's support after her remarriage or his death, which in either case would be contrary to the procedure of § 452.370 here. *Cates,* 819 S.W.2d at 734. She would, in effect, be empowered to do by the back door what she could not do by the front door. Further, if this did occur, the law does not provide any mechanism for refunding support already paid in advance by appellant which is later determined as violative of § 452.370.3. Given this fact, the statutory scheme for maintenance simply does not contemplate or allow advance payments of maintenance or support. *Id.*

Third, in order to determine how much appellant should contribute now as maintenance to provide for respondent's support in the future, the court would have to know her future circumstances, since maintenance is predicated on need in light of the circumstances existing at the time of the award. *Leslie,* 827 S.W.2d at 184; *see also, McGehee v. McGehee,* 943 S.W.2d 364, 372 (Mo.App. 1997) (holding that maintenance should not be based on future happenings). Obviously, to determine future support based on future circumstances would require the court to engage in pure, unadulterated speculation. On this issue, the Supreme Court of Missouri has stated that there is a "general rule prohibiting modification based upon speculative evidence regarding the future condition of the parties." *Id.* "In determining a former spouse's ability to support himself or herself in the future, the trial court should not speculate on evidence that might be adduced in a latter modification proceeding." *Id.* The danger in allowing speculation as to future circumstances to determine future support is that such speculation could prove to be wholly inaccurate rendering the maintenance award in advance unreasonable. Here, for example, based on present circumstances, one could speculate as to the amount of retirement funds that would be needed to provide a reasonable retirement for respondent, and accordingly, what should be appellant's contribution now to achieve this goal. However, this speculation as to her future need for support from appellant could prove to be totally inaccurate if the respondent inherits a million dollars from a long-lost uncle ten years hence and no longer needs her predicted retirement funds for her support. This lack of any degree of certainty is exactly why we have a statutory procedure to deal with a change in circumstances and the support requirement in the future. This procedure is known as modification as provided for in § 452.370. This procedure allows modification of a maintenance award based on known, changed circumstances which exist at the time the modification is sought, which procedure does not involve engaging in prohibited speculation. § 452.370.6. If we were to allow trial courts to order support payments in advance based on speculation and mere predictions, we would be, in effect, allowing the party seeking maintenance to circumvent the statutory purpose of modification. *Id.*

Fourth, we agree with appellant that contributions to a retirement fund should not be allowed as a reasonable expense in calculating maintenance because by allowing the appellant to accrue retirement funds, she would be accumulating capital or building an estate which is not allowed. Maintenance awards are to be limited to the "demonstrable needs of the party receiving support and not to provide an accumulation of capital." *Allen,* 927 S.W.2d at 888 (citations omitted); *see also, Jung,* 886 S.W.2d at 740. "[M]aintenance is not awarded in order to permit the

recipient to build an estate." *Bybee,* 879 S.W.2d at 795. Although, in *Allen, supra,* under the concept of rehabilitative maintenance only, this court approved a maintenance award of a very limited duration which was based, in part, on expenses for the spouse to establish a business to become self-sufficient within a short time frame, *Allen,* 927 S.W.2d at 885, we hold contributions to retirement funds are not consistent with rehabilitative maintenance, but rather constitute an accrual of capital or the building of an estate to provide future support, which is prohibited. *Allen,* 927 S.W.2d at 885; *Jung,* 886 S.W.2d at 740; *Bybee,* 879 S.W.2d at 795.

Fifth, even assuming, *arguendo,* that forced contribution by an ex-spouse to a former spouse's future support would not otherwise be improper for the reasons cited, *supra,* it still should not be allowed for a further reason. Assuming that the salutory purpose of insuring the future financial well-being of the obligee and relieving to some extent the obligor's maintenance obligation in the future would be served by requiring the obligor to contribute to the obligee's retirement fund and his or her future support, it would be difficult, if not impossible, for the court to ensure that the maintenance ordered now and earmarked for future support by way of payments to retirement funds would be used for retirement purposes. There is no statutory mechanism or procedure to prevent a party receiving maintenance, in part, for contributing to his or her retirement fund or other investment to provide financial security in the future from converting the retirement monies to purposes other than retirement. This then could result in the situation of the maintenance obligor paying, in part, maintenance now to provide support for the obligee in the future in the form of retirement funds or investments which ultimately do not exist at his or her retirement. This could then lead to the inequitable situation of the obligor being required to pay support in the future which he or she technically and theoretically had already paid for in advance in the form of present maintenance. This once again demonstrates why there is a specific statutory procedure to modify maintenance orders to address changed and known circumstances, rather than speculating as to possible future needs, relying on forecasts by the trial court of the future economic circumstances of the parties.

For the foregoing reasons, we find that the trial court erred in allowing respondent to claim her contribution to her retirement fund as a reasonable need in the calculation and award of maintenance. In holding as we do on this issue, we do not mean to indicate that a trial court, in calculating and awarding maintenance, cannot allow a reasonable amount above the itemized expenses of the party seeking maintenance to meet unexpected day-to-day expenses which, given their nature, may be reasonable under the circumstances, yet are incapable of specific itemization. *See In re Marriage of Tappan,* 856 S.W.2d 362, 367 (Mo.App.1993). Of course, in determining the appropriateness of including such expenses in the award of maintenance, the court should consider them in light of the factors set out in Section 432.335, including but not limited to the standard of living established during the marriage and the financial resources of the parties. *Smith,* 632 S.W.2d at 91. We only hold that contributions to retirement funds, investments, and the like intended to provide support in retirement are not allowable expenses for calculating and awarding maintenance. Future support is to be addressed in the future pursuant to the statutory modification procedure enacted by our legislature.

## Conclusion

From the record, it is apparent that the trial court, in calculating its maintenance award to respondent, relied on expense figures claimed in her income and expense statement and additional expenses claimed at trial, some of which were either not supported by the evidence or were not allowable under the law as discussed, *supra.* As such, we find the trial court erred and abused its discretion in its award of maintenance to respondent. Thus, we reverse the judgment of the trial court awarding respondent maintenance of $615 per month and remand the cause for further proceedings to determine

and award respondent maintenance consistent with this opinion.

All concur.